UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

WENDY J. WILLIAMS HUNTER, et al.,

                Plaintiffs,

                             **Case No. 1:25-cv-05107**

v.

                             **NOTICE OF PLAINTIFFS'
CORRECTED MEMORANDUM OF
LAW IN OPPOSITION TO ALLAN B.
DIAMOND'S MOTION TO
INTERVENE**

SABRINA E. MORRISSEY, et al.,

                Defendants.
-----------------------------------------------------------x

      PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Opposition to Allan B. Diamond's Motion to Intervene, Plaintiffs, by and through undersigned counsel, hereby opposes the Motion to Intervene (Dkt No. 93) and the supporting Memorandum of Law (Dkt No. 94) filed by proposed intervenor Allan B. Diamond ("Diamond") and respectfully requests that the Court deny the motion in its entirety.

      Plaintiffs are filing this corrected memorandum of law in an abundance of caution to ensure compliance with Local Civil Rule 7.1. Accordingly, a table of contents and table of authorities has been added to the memorandum of law, case citations and references to same have been corrected (if needed), and the filing has been retitled. A footnote within Section IV on page 15 also appears to have been inadvertently absent from Plaintiffs' original opposition filing and thus has been added herein. The word count certification has been updated to reflect that change. A redlined

copy showing all differences between the original and revised filing is also attached in accordance with this Court's Individual Rules & Practices I.C.3.

DATED:     August 11, 2025

Respectfully submitted,

LaShawn N. Thomas
MIAMI ENTERTAINMENT LAW GROUP
Email: lthomas@miamientertainmentlawgroup.com

Celeste N. McCaw
MIAMI ENTERTAINMENT LAW GROUP
261 North University Drive, Suite 500
Plantation, Florida 33324
Tel: (305) 417-6450
Email: cmccaw@miamientertainmentlawgroup.com

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** …………………………………………...….. 1

**ARGUMENT** …………………………………………………………… 4

   I.     DIAMOND CANNOT INTERVENE AS OF RIGHT UNDER RULE 24(a) ……. 4

        **A. No Timely or Good-Faith Motion** ……………………………………… 5

        **B. No Direct, Substantial, or Legally Protectable Interest** …………………… 5

        **C. No Risk of Impairment** ……………………………………………… 7

        **D. Adequate Representation Already Exists** ……………………………... 8

   II.    THE MOTION VIOLATES RULE 24(c) …………………………………… 9

   III.   DIAMOND'S APPOINTMENT IS INVALID, CONFLICTED, AND PROCEDURALLY SUSPECT …………………………………………… 10

   IV.   PERMISSIVE INTERVENTION UNDER RULE 24(b) IS IMPROPER) ………. 14

   V.    MR. HUNTER IS A PROPER NEXT FRIEND UNDER RULE 17(c)(2) ……….. 15

        **A. The MSA Enforcement Action Does Not Bar Next-Friend Status** ………... 16

        **B. Mr. Hunter's Standing Reflects the Need for Federal Oversight** …………. 17

   VI.   DIAMOND'S ATTACKS ON MELG ARE BASELESS AND MISLEADING … 18

   VII.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY ROOKER-FELDMAN……… 19

   VIII. DIAMOND'S RELIANCE ON MS. HUNTER'S ALLEGED STATEMENTS IS MISPLACED ………………………………………………………... 20

        **A. Ms. Hunter's Statements Are Not Voluntary or Reliable** ………………… 21

        **B. Context Confirms Coercion, Not Consent** ………………………………… 22

   IX.   DIAMOND'S CITATION OF JURISDICTIONAL AND ABSTENTION CASES IS MISPLACED AND IRRELEVANT TO RULE 24

**Page**

INTERVENTION ……………………………………………………………… 23

**CONCLUSION** …………………………………………………………...……….. 25

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*,
    873 F.2d 25, 30-31 (2d Cir. 1989) ........................................................ 16

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001) .............................................................. 7

*Business Guides, Inc. v. Chromatic Communications Enters., Inc.*,
    498 U.S. 533 (1991) ........................................................................ 3

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ........................................................ 4, 6, 14

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868 (2009) ...................................................................... 11

*Colorado v. Connelly*,
    479 U.S. 157 (1986) ...................................................................... 22

*Donaldson v. United States*,
    400 U.S. 517 (1971) ...................................................................... 23

*EEOC v. Nat'l Children's Ctr., Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ...................................................... 14

*Ferreira v. Lynch*,
    831 F.3d  803 (7th Cir. 2016) .................................................... 11, 20, 21

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014) ............................................................ 4

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
    797 F.2d 85 (2d Cir. 1986) ............................................................ 24

*Hoblock v. Albany Cnty. Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) ............................................................ 19

*In re Bank of N.Y. Derivative Litig.*,
    320 F.3d 291 (2d Cir. 2003) ............................................................ 6

*Jackson v. Denno*,
    378 U.S. 368 (1964) ...................................................................... 22

*McKithen v. Brown*,
    481 F.3d 89 (2d Cir. 2007) ............................................................ 19

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ...................................................................... 12

*Morrison v. City of Baton Rouge*,
    761 F.2d 242 (5th Cir. 1985) ...................................................... 20, 24

*Padilla ex rel. Newman v. Bush*,
    233 F. Supp. 2d 564 (S.D.N.Y. 2002) .............................................. 17

*Shannon v. Jacobowitz*,
    394 F.3d 90 (2d Cir. 2005) ............................................................ 12

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ...................................................................... 9

*United States v. City of New York*,
    198 F.3d 360 (2d Cir. 1999) ............................................................ 24

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ............................................................... 14

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986) ............................................................ 5

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990) .............................................................. 7

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................. 8, 17, 20

*Winklevoss Capital Fund, LLC v. Shrem*,
    351 F. Supp. 3d 710 (S.D.N.Y. 2019) ........................................... 3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ............................................................ 6

## **RULES**

Federal Rule of Civil Procedure 11 ................................................... 3, 18

Federal Rule of Civil Procedure 12 ................................................... 23, 24

Federal Rule of Civil Procedure 17(a) ............................................... 2, 9

Federal Rule of Civil Procedure 17(c) ............................................... 8, 15, 17, 20

Federal Rule of Civil Procedure 24(a) ............................................... 2, 4, 6, 7, 9

Federal Rule of Civil Procedure 24(b) ............................................... 14

Federal Rule of Civil Procedure 24(c) ............................................... 3, 9, 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

WENDY J. WILLIAMS HUNTER, et al.,

               Plaintiffs,

                                  **Case No. 1:25-cv-05107**

v.

                                 **PLAINTIFFS' CORRECTED**
                                 **MEMORANDUM OF LAW IN**
                                 **OPPOSITION TO ALLAN B.**
                                 **DIAMOND'S MOTION TO**
                                 **INTERVENE**

SABRINA E. MORRISSEY, et al.,

               Defendants.
------------------------------------------------------------x

      Plaintiffs Wendy J. Williams Hunter ("Ms. Hunter"), by and through her next friend Kelvin Hunter, and Kelvin Hunter ("Mr. Hunter") individually, respectfully submit this corrected memorandum of law in opposition to the Motion to Intervene (Dkt No. 93) and the supporting Memorandum of Law (Dkt No. 94) filed by proposed intervenor Allan B. Diamond ("Diamond"). The motion is procedurally defective, jurisdictionally flawed, and substantively without merit. Therefore, Plaintiffs respectfully request that the Court deny Diamond's Motion to Intervene in its entirety.

## PRELIMINARY STATEMENT

      Diamond's motion fails procedurally, factually, and legally, and must be denied. As a threshold matter, Diamond lacks a "direct, substantial, and legally protectable interest" in this action as required by Fed. R. Civ. P. 24(a)(2). Federal courts have repeatedly held that an attorney's authority to represent a party must be grounded in a valid, case-specific appointment. Without an

express order or lawful designation conferring such authority in this case, Diamond lacks standing and cannot satisfy Rule 24's requirement of a legally protectable interest. Allowing Diamond to intervene based solely on a state court appointment that is limited to another tribunal would impermissibly conflate representational capacity across judicial forums, undermining the integrity of Rule 17(a) and Rule 24(a)(2).

His asserted basis for intervention—a retroactively entered order by Justice Lisa A. Sokoloff appointing him as Ms. Hunter's attorney in the state guardianship proceeding—is inherently conflicted, as Justice Sokoloff is herself a named defendant in this lawsuit. This order creates an appearance of impropriety and raises concerns about the integrity of that judicial process and the silencing of the pursuit of redress on Ms. Hunter's behalf under federal law. The retroactive nature of the order exemplifies the very type of judicial misconduct alleged in Plaintiffs' Complaint. Moreover, nowhere does the order purport to authorize Diamond to act for Ms. Hunter outside the confines of that guardianship matter—let alone to intervene in a federal civil rights case. His role in a separate forum does not confer representational rights here, especially where the very proceeding that purportedly authorizes his role is under constitutional challenge in this action.

As Diamond himself acknowledged in his July 17, 2025 letter to this Court, he and Peter J. Strauss ("Strauss")[1] were appointed by the Guardianship Court "to be lead counsel to W.W.H. […] individually in the guardianship proceeding," and that they—alongside court-appointed

---

[1] Diamond's repeated references to Strauss as "co-counsel" are misleading and procedurally improper, as Strauss has neither signed any papers nor formally appeared before the court. Under the Federal Rules of Civil Procedure, co-counsel must be formally recognized and actively participate in filings or proceedings. Strauss's failure to sign the July 17, 2025 letter to the Court or the motion to intervene raises serious questions about his actual role in the case and undermines the validity of Diamond's references to him. By labeling Strauss as co-counsel without the requisite formal involvement, Diamond is attempting to give undue weight to Strauss's unsubstantiated influence, without providing the Court with the necessary legal or procedural foundation for such claims.

guardian Sabrina Morrissey—are the only persons authorized to represent her "in connection with her guardianship proceedings." The letter and order contain no provision—explicit or implied— granting Diamond authority to intervene in separate litigation. The order is thus narrowly drawn and confers no authority onto Diamond to speak for or to represent Ms. Hunter in this federal action. Nevertheless, Diamond continues to hold himself out as Ms. Hunter's duly authorized representative in this matter as her "lead attorney" and continues to make filings on the record representing such. Diamond does not represent Ms. Hunter in this lawsuit, which is evidenced by his motion to intervene. We kindly request that the Court instruct Diamond to correct past filings and to appropriately file documents in this matter in the future.[2]

Further, Diamond's motion is procedurally defective under Rule 24(c), as he has failed to submit a pleading setting forth the claims or defenses for which intervention is sought. His filing is also functionally defective, as it advances no independent claim, asserts no defense relevant to the merits, and contains no showing that the resolution of this action will impair any legally protectable rights of his own. Instead, Diamond's motion seeks to bypass the substance of the constitutional claims entirely by calling for immediate dismissal of this action—thereby effectively preventing the litigation from reaching the merits. Diamond's motion obscures the central reality that no other individual, including Diamond himself, has filed any action to vindicate Ms. Hunter's

---

[2] Diamond's filings in the guise of authorized counsel are both improper and misleading. Such conduct raises serious concerns under Fed. R. of Civ. P. 11, which prohibits filings made for improper purposes or without proper legal standing. *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 542 (1991) (Rule 11 applies to "anyone who signs a pleading, motion, or other paper" presented to the court). Courts have inherent authority to strike unauthorized filings and to require parties to correct the record. *See Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 716 (S.D.N.Y. 2019) ("Federal courts possess inherent powers...to manage their own proceedings and to control the conduct of those who appear before them."). Here, Diamond's continued self-identification as Ms. Hunter's representative in this proceeding—despite lacking appointment—creates confusion, undermines the integrity of this docket, and could prejudice the administration of justice. Because he is not authorized to represent Ms. Hunter in this litigation, we ask this Court to instruct him to cease referring to himself as Ms. Hunter's legal representative and to correct any prior filings made under that misrepresentation. All future filings by Diamond must be properly captioned and styled as those of a proposed intervenor—not as counsel for Ms. Hunter as courts in this District have made clear that only authorized representatives may file on behalf of a party.

constitutional rights, taken any meaningful steps to secure Ms. Hunter's liberty, or assert any position consistent with her publicly expressed desire to end the guardianship.

Diamond's motion relies on vague allusions to Ms. Hunter's supposed preferences, citing press reports and ambiguous statements. But as established in Second Circuit precedent, such expressions must be carefully scrutinized when the ward is subject to state-imposed isolation, a gag order, and near-total communicative control by court-appointed agents. Under these conditions, no weight can be given to purported statements from Ms. Hunter that have not been made freely and voluntarily. Intervention cannot be permitted as a tool to suppress a vulnerable individual's access to federal court.

## **ARGUMENT**

### I.    DIAMOND CANNOT INTERVENE AS OF RIGHT UNDER RULE 24(a)

To intervene as of right under Fed. R. Civ. P. 24(a)(2), a proposed intervenor must demonstrate that: (1) the motion is timely; (2) the movant has a direct, substantial, and legally protectable interest in the subject matter of the litigation; (3) disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the existing parties do not adequately represent the interest. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001). The burden is on the intervenor to establish all four elements, and the failure to satisfy even one is fatal. *See Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). Here, Diamond fails fatally.

### A.  No Timely or Good-Faith Motion.

Although Diamond filed his motion after this case was initiated, the circumstances surrounding his entry into this matter reflect a lack of timeliness and good faith. The irregular timing and retroactive nature of Justice Sokoloff's order appointing him as Ms. Hunter's attorney in the state guardianship proceeding raise substantial concerns about strategic delay and procedural manipulation. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986) (noting that delay is evaluated in context of litigation stage and potential prejudice). While retroactive orders may sometimes reflect prior rulings, such practice is improper where the judge issuing the order is herself a defendant and that order is being utilized to nullify a pending federal suit challenging her conduct. Further, Diamond has failed to submit a transcript, contemporaneous docket entry, or unsealed record to substantiate his alleged appointment on April 2, 2025. The absence of any transparent, contemporaneous record combined with the post hoc issuance of the order strongly suggests the appointment was not made in good faith but rather engineered to manufacture standing and derail this litigation. A backdated appointment issued by a named defendant—without a neutral justification or verifiable record—is constitutionally suspect and evidences a lack of good faith that should bar intervention and without access to the record from the sealed guardianship proceeding, the Court cannot ascertain the legitimacy of Diamond's standing or authority to intervene.

### B.  No Direct, Substantial, or Legally Protectable Interest.

Diamond asserts no personal stake in this litigation. His claimed interest arises solely from a retroactive court appointment—not in his individual capacity, but as purported legal counsel

under a guardianship framework Plaintiffs challenge as unconstitutional.[3] Such a role is inherently derivative and fails to satisfy Rule 24's requirement of a direct, substantial, and legally protectable interest. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (interest must be "direct, substantial, and legally protectable"—not economic, speculative, or tangential); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998). His claimed interest is the fruit of the poisonous tree being that it originates from the very guardianship regime Plaintiffs assert violates federal rights. Federal courts do not recognize an interest as legally protectable when it depends on the continuing validity of a regime that is itself the subject of constitutional challenge. Allowing intervention on that basis would set a dangerous precedent—where a judge named in a federal civil rights suit could shield herself by installing a handpicked advocate to derail the lawsuit. That would convert Rule 24 from a procedural safeguard into a tool of institutional self-protection, undermining due process and the separation of powers. *See Butler*, 250 F.3d at 179 (2d Cir. 2001) (intervenor must demonstrate a "significantly protectable interest" directly threatened by the action).

   Diamond's appointment is expressly limited in scope and does not authorize him to act on Ms. Hunter's behalf in this federal civil rights case. The order appoints Diamond as counsel for Ms. Hunter solely within the context of the guardianship proceeding pending in New York Supreme Court. The letter makes no claim that the guardianship court authorized or even

---

[3] Diamond's reliance on *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022), and *New York ex rel. American Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, No. 21-CV-6883 (LJL), 2022 WL 2758023 (S.D.N.Y. July 14, 2022), is misplaced. *Berger* and *Egon Zehnder* involved intervenors with independent statutory or contractual rights—state legislative leaders defending a statute, and a private party protecting its own property interests. Diamond has neither. His authority is derivative of a back-dated appointment by a judicial defendant in a separate state guardianship case and is adverse to Ms. Hunter's claims. *Berger* and *Egon Zehnder* underscore that Rule 24(a)(2) presupposes an intervenor's own independent and protectable stake; they do not authorize a state-appointed surrogate to insert himself into a federal civil rights action for the purpose of extinguishing the very rights it seeks to vindicate.

contemplated representation in any other legal forum. Diamond's interest is adverse to Ms. Hunter's rights. His objective is not to vindicate her liberty, but to preserve the very structure that Plaintiffs contend unlawfully stripped it away. An interest so fundamentally misaligned with the core claims of the litigation is not protectable under Rule 24, and his motion must be denied.

### C.  No Risk of Impairment.

This action does not concern Diamond's personal rights, property, or liberty. While a federal court cannot directly terminate the guardianship, it may closely examine the circumstances giving rise to it. If Plaintiffs prevail, Ms. Hunter's guardianship may be invalidated or she may be awarded damages but, more importantly, no relief sought here seeks to restrain or enjoin Diamond personally. At most, a ruling in Plaintiffs' favor could displace his role as court-appointed counsel—an interest that is both derivative and unprotected under Rule 24(a). *See Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) ("An interest...contingent upon the occurrence of a sequence of events, is not sufficient to satisfy Rule 24(a)(2).").

Rule 24 does not authorize parties to enter federal civil rights litigation merely to defend the existence of a state regime being constitutionally challenged—particularly when their asserted interest is neither direct nor independently impaired. The Second Circuit has consistently held that intervention is improper where the movant has "alternative means" to protect their interest. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132 (2d Cir. 2001). Because Diamond retains full access to the guardianship court and is not personally bound by the outcome of this federal action, intervention is neither necessary nor appropriate.

### D.  Adequate Representation Already Exists.

Ms. Hunter is currently proposed to be represented by her next friend, Mr. Hunter, pursuant to Rule 17(c)(2). Mr. Hunter's motion to proceed as next friend remains pending and is incorporated herein by reference (Dkt No. 2). Mr. Hunter satisfies the "next friend" standard as set forth in *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990). Mr. Hunter is the father of Ms. Hunter's only child and maintains a significant familial relationship. He is also the only individual to petition this Court to challenge the legality of Ms. Hunter's guardianship and assert her federal constitutional rights—meeting both the relational and dedication prongs of *Whitmore*. Diamond's reliance on prior marital litigation—specifically, enforcement of a Marital Settlement Agreement (MSA)—is misplaced. That proceeding arose not from any adverse interest between Mr. Hunter and Ms. Hunter, but in direct response to the unauthorized conduct of Ms. Hunter's court-appointed guardian, defendant Sabrina Morrissey, and her financial advisor, defendant Lori Schiller. Contrary to Diamond's suggestion, Mr. Hunter's interests are not adverse. He is not asserting claims against Ms. Hunter, but rather defending her liberty, autonomy, and access to court. Diamond's claim of an acrimonious divorce is baseless. The marriage lasted over 22 years, and the divorce proceeding was resolved in fewer than 18 months, evidencing a cooperative, non-adversarial process. Mr. Hunter's role in this case also arises from his effort to enforce the MSA, a binding divorce decree. That court-sanctioned agreement was improperly disrupted when defendants Sabrina Morrissey and Lori Schiller unilaterally halted agreed-upon payments owed to Mr. Hunter—without first seeking modification from the original divorce court. This unauthorized interference with a judicially approved settlement is part of what Mr. Hunter now challenges. Far from presenting a conflict, his actions demonstrate a consistent commitment to restoring Ms. Hunter's legal and constitutional rights and addressing the harm flowing therefrom.

Diamond's interests are fundamentally misaligned with those of Ms. Hunter. He does not seek to vindicate her constitutional or statutory claims, but to dismiss them outright. A proposed intervenor who seeks to extinguish the real party's claims cannot credibly assert that their interests are aligned. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Because Mr. Hunter's representation meets the minimal adequacy standard required under Rule 24(a)(2), and Diamond's objectives are plainly adverse, intervention must be denied. Disagreement over litigation strategy is not enough. Rule 24 does not permit intervention where the proposed intervenor seeks to silence, rather than support, the real party's claims.

Diamond's reference to Rule 17(a)(3) is equally unavailing. That rule governs substitution of the real party in interest only upon motion and court approval—not through unauthorized intervention by a third party with no motion pending and no alignment with the asserted claims. Rule 17(a)(3) cannot be used to bypass the next-friend process or derail ongoing constitutional litigation. Because Diamond's motion is procedurally flawed, substantively adverse, and unsupported by any legally protectable interest, intervention must be denied.

## II.    THE MOTION VIOLATES RULE 24(c)

Fed. R. Civ. P. 24(c) requires that a motion to intervene "must... be accompanied by a pleading that sets out the claim or defense for which intervention is sought." This requirement is not a mere technicality; it is essential to give the Court and the parties proper notice of the legal and factual basis for intervention and to allow meaningful judicial assessment of the proposed intervenor's position.

Diamond's failure to file a pleading is not a mere technical defect—it reflects a strategic refusal to disclose the legal basis of his intervention.[4] Diamond cannot circumvent these procedural rules. To permit his intervention now would invite misuse of Rule 24 to circumvent basic notice and pleading standards. Having failed to clearly articulate his claims or defenses in his motion, judicial estoppel bars Diamond from shifting his legal position post hoc to justify his intervention.

The Rule 24(c) requirement is not discretionary. Diamond's failure to submit a pleading deprives the Court of the ability to assess the contours of his claimed legal theory. If he seeks to cure this defect after briefing, the Court should decline to accept same as an untimely pleading, as it would both prejudice Plaintiffs and confirm that Diamond's original motion lacked a legitimate legal basis. His silence on the nature of his claims confirms that his interest is not substantive, but purely obstructive.

III.    DIAMOND'S APPOINTMENT IS INVALID, CONFLICTED, AND PROCEDURALLY SUSPECT

Diamond's purported authority to intervene in this matter arises from an order by Justice Sokoloff appointing him as Ms. Hunter's attorney in the state guardianship proceeding. That order suggests a tactical effort to confer standing post hoc and to obstruct the federal litigation by manufacturing a basis for intervention that did not exist at the time the case was filed. When a judge who is a party-defendant to the federal action uses her own court to retroactively install legal

---

[4] Even when courts have discretion to overlook technical defects, they do so only when the intervenor has clearly articulated a concrete legal position, claim, or defense. Diamond's motion, however, lacks any indication of such a position, instead suggesting that his intent is to obstruct the case's progression. Moreover, as a non-party who has not been substituted as the real party in interest, Diamond lacks standing to move for dismissal. Courts should not permit a proposed intervenor—particularly one acting in a fiduciary capacity from a contested regime—to dictate the outcome of constitutional litigation.

counsel, it raises serious questions of neutrality and propriety, particularly where the appointment was backdated, a fact which potentially places it outside the scope of judicial immunity.

Neither Diamond nor his co-counsel, Strauss, have taken any steps to advocate for Ms. Hunter's actual rights or stated preferences. They have not filed for habeas corpus to challenge her confinement, asserted any claim on her behalf to vindicate her liberty, or petitioned for reinstatement of her right to counsel of choice. Their hostility toward this federal action align them not with Ms. Hunter's best interests, but with the power structure designed to suppress her autonomy and constitutional rights.  As the Seventh Circuit emphasized in *Ferreira v. Lynch*, 831 F.3d 803 (7th Cir. 2016), the government cannot speak for a silenced person while simultaneously controlling who may speak on her behalf, especially where due process interests are implicated. Diamond asserts that he was appointed as Ms. Hunter's counsel "on the record" at a hearing, yet he has not submitted any transcript, contemporaneous order, or minute entry to substantiate this claim. Diamond contends that the relevant documents exist but are "sealed" by the guardianship court, and therefore unavailable for disclosure. However, this position is both legally and constitutionally untenable. Further compounding these conflicts, Diamond has stated that Ms. Hunter could be held responsible for the defendants' legal fees—including those of the guardian and other parties accused of violating her rights. Such a statement, made by an officer of the court purporting to represent Ms. Hunter, reveals a structural conflict of interest and a predetermined intent to deplete her estate to defend the very actors she is suing. The practice of using a ward's assets to finance the defense of alleged wrongdoers in litigation brought on the ward's behalf creates an unconstitutional risk of bias and violates the Fourteenth Amendment's guarantee of due process. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877–78 (2009) (due process requires recusal when the probability of actual bias is too high to be constitutionally tolerable). In this

District, courts recognize that such financial entanglements undermine the integrity of proceedings and justify disqualification or injunctive relief. *See Shannon v. Jacobowitz*, 394 F.3d 90, 96–97 (2d Cir. 2005). Here, the threatened depletion of Ms. Hunter's property to defend her adversaries is not only adverse to her interests, but is the product of a systemic policy or custom within the Article 81 regime that warrants federal scrutiny under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

By invoking authority derived from a sealed appointment, Diamond has made the legitimacy of that appointment a central issue—and he must therefore produce the underlying records. Without access to these records, the Court cannot assess the procedural integrity of Diamond's appointment. Given the importance of the appointment hearing and the resulting order to Diamond's asserted authority, the absence of the record is a serious evidentiary deficiency. This lack of transparency further undermines the credibility of Diamond's position and weighs strongly against permitting his intervention. Plaintiffs request that, to the extent Diamond relies on that appointment to justify intervention; the Court requires that Diamond produce the transcript and docket entry of the April 2, 2025 hearing, or submit the record for in camera review.

Further, it is no small irony that Diamond himself admits that since August 2024 Ms. Hunter "has lacked – and continues to lack – the legal capacity to hire attorneys because of temporary rulings that the New York Supreme Court issued…in connection with her guardianship" (Dkt No. 94 at 1), yet she has been subjected to a sweeping, life-altering guardianship regime since February 2022. Two and a half years of silence, isolation, and deprivation occurred before any court deemed her legally incapacitated. And now, having entered this case only after this action was filed, Diamond purports to act in Ms. Hunter's interests by opposing her claims, working to

extinguish the only litigation that dares to ask how such an unconscionable deprivation was allowed to happen.

Diamond's motion also alleges that Ms. Hunter "selected" him and Strauss to "represent her individual interests and be willing and able to pursue all actions on her behalf." (Dkt No. 94 at 1). This statement is both legally and factually unsustainable. If, as Diamond and the state court assert, Ms. Hunter has been adjudicated incapacitated and is therefore legally barred from retaining or directing counsel, then she cannot—by definition—have selected Diamond or Strauss as her attorneys. This contradiction exposes a fundamental flaw in Diamond's narrative. In reality, any decision to install Diamond and Strauss as counsel for Ms. Hunter was not made by Ms. Hunter herself, but by the very individuals whose conduct is at issue in this case—namely, defendant Justice Sokoloff and/or defendant Sabrina Morrissey, the court-appointed guardian. Any so-called "selection" made under these circumstances is not voluntary—it is *imposed*—being that, in accordance with the guardianship court's own premise, Ms. Hunter lacks legal capacity to make such decisions.

This inconsistency further supports the denial of Diamond's motion to intervene and confirms the adverse alignment of his interests with the guardianship regime rather than with Ms. Hunter's constitutionally protected rights. His attempt to portray himself as Ms. Hunter's chosen advocate is a misrepresentation that only reinforces the core of Plaintiffs' position: that Diamond does not represent Ms. Hunter, but rather the state-sanctioned structure that silences her voice and suppresses her legal agency.

In this context, the backdated appointment of Diamond by a conflicted judge is not a legitimate basis for intervention. Diamond has no independent authority, no record of legal advocacy on Ms. Hunter's behalf, and no standing to insert himself into this civil rights action.

IV.    PERMISSIVE INTERVENTION UNDER RULE 24(b) IS IMPROPER

Under Fed. R. Civ. P. 24(b)(1)(B), a court may permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact." However, permissive intervention remains discretionary and is routinely denied where the intervenor's participation would unduly delay or prejudice the adjudication of the rights of the original parties. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); *Butler*, 250 F.3d at 176 (2d Cir. 2001). Diamond identifies no claim or defense that shares a common legal or factual basis with the constitutional claims asserted in this case. Diamond's motion fails to address the federal causes of action and instead focuses on extraneous media narratives and procedural grievances unrelated to the claims asserted. These subjects are wholly collateral to the constitutional and statutory violations at the heart of the complaint. Permissive intervention is not appropriate for parties seeking to assert contrary factual narratives unrelated to the claims pleaded. *See EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) ("Permissive intervention is inappropriate when the intervenor will raise issues collateral to the underlying litigation.").

Diamond's intervention would also unduly delay these proceedings and prejudice Plaintiffs' ability to pursue timely relief.[5]  His motion seeks to derail the litigation at its threshold

---

[5] Diamond's reliance on *"R" Best Produce, Inc. v. Shulman-Robin Mktg. Corp.*, 467 F.3d 238 (2d Cir. 2006) is equally unavailing. *"R" Best Produce* simply recites the settled four-factor framework for permissive intervention and affirms that the trial court retains broad discretion to deny intervention where participation would cause delay or prejudice. It did not involve, and certainly did not approve, intervention by a party whose sole objective was to terminate the

stage and would transform this federal civil rights action into a forum for defending a state guardianship regime that is under direct constitutional challenge. This would fundamentally shift the focus away from Ms. Hunter's rights and liberty, effectively subordinating her claims to the guardianship court's authority—the very authority that Plaintiffs allege is unconstitutional and abusive. Diamond's proposed intervention is not neutral legal participation—it is a litigation strategy designed to legitimize a challenged regime and silence this action. That delay and transformation of this case's focus would irreparably prejudice Ms. Hunter, who remains under restrictions that she is unable to challenge except through this proceeding. The Court should be especially cautious where intervention would distort the nature of a civil rights case into a collateral defense of contested state authority. It would, in effect, allow state-appointed actors to litigate against Ms. Hunter's constitutional claims while silencing Ms. Hunter—turning the guardianship court into both the jailer and the gatekeeper of justice. Accordingly, permissive intervention is not warranted.

V.     <u>MR. HUNTER IS A PROPER NEXT FRIEND UNDER RULE 17(c)(2)</u>

Fed. R. Civ. P. 17(c)(2) allows a "next friend" to sue on behalf of an individual who is unable to litigate due to mental incompetence or disability, so long as the next friend is "a suitable person" to represent the ward's interests. Although Ms. Hunter was declared incapacitated in 2024 by a New York State guardianship court, she has been under a regime that deprives her of access to counsel of her choosing, the ability to communicate freely, and the right to petition for release

---

underlying action. *"R" Best Produce* does not support permissive intervention by an adversary whose "common question" is limited to defeating the plaintiff's claims in their entirety.

since 2022. Her confinement, isolation, and gag orders placed on her counsel, herself and her family render her legally incapable of initiating or maintaining a lawsuit on her own behalf.

Mr. Hunter is the only person to date who has taken affirmative legal steps to challenge the legality of her guardianship, to seek habeas-like relief, and to file suit for violations of her constitutional rights under the ADA, First and Fourteenth Amendments, and RICO. His actions demonstrate dedication to Ms. Hunter's personal liberty and access to justice—regardless of their prior marital history.

### A.    The MSA Enforcement Action Does Not Bar Next-Friend Status.

Diamond's attempt to disqualify Mr. Hunter based on a MSA enforcement action is both misleading and legally deficient. Federal courts have consistently rejected disqualification of next friends based on the existence of parallel financial interests, especially when the purported conflict is attenuated or arises from a different forum. *Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 30-31 (2d Cir. 1989) (a next friend need not be disqualified solely because of a financial tie, absent actual and material conflict).

The MSA enforcement matter does not target Ms. Hunter directly; rather, it concerns unauthorized actions by third parties, including named defendants, who violated the MSA upon taking control of Ms. Hunter's finances and assets and without obtaining authorization from the New Jersey family court judge presiding over the marital estate. These actions were not authorized by Ms. Hunter, nor do they reflect any exercise of independent judgment by Ms. Hunter. Instead, these improper actions show a distortion of the marital estate by outside actors exploiting the guardianship structure for their own ends.

Further, the presence of a limited financial interest—particularly when arising from prior unrelated litigation—should not disqualify a next friend from serving. The relevant inquiry is whether the next friend acts in good faith. Here, Mr. Hunter is the only individual who has initiated action to vindicate Ms. Hunter's federal rights. That is precisely the type of "genuine dedication" contemplated by *Whitmore*, 495 U.S. at 163–64 (1990). Here, the MSA enforcement action does not present an actual, material conflict of interest, nor does it undermine Mr. Hunter's fitness to act. His participation is motivated by Ms. Hunter's prolonged isolation, the suppression of her legal agency, and the failure of all other actors—including her guardian and court-appointed counsel—to seek meaningful review of her confinement.

**B.    Mr. Hunter's Standing Reflects the Need for Federal Oversight.**

What distinguishes Mr. Hunter is not a conflict—but a willingness to act, when all others, including Diamond, have stood by passively. Mr. Hunter has not sought control over Ms. Hunter's assets, has not petitioned for guardianship himself, and has not acted to supplant her autonomy—but to restore it. This aligns with the constitutional principles underlying *Whitmore* and Rule 17(c): when a person is isolated by state mechanisms and denied meaningful access to the courts, federal law authorizes those with genuine connection and concern to step in. *See Padilla ex rel. Newman v. Bush*, 233 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) (next friend standing is proper where no one else has acted to protect rights of the confined individual).

Mr. Hunter satisfies Rule 17(c)(2) and is the only party presently positioned or even attempting to protect Ms. Hunter's constitutional interests in this litigation. His relationship is personal, his advocacy is legally grounded, and his motives are distinct from the actors whose silence and obstruction have prolonged Ms. Hunter's isolation.

VI.    <u>DIAMOND'S ATTACKS ON MELG ARE BASELESS AND MISLEADING</u>

Diamond's motion to intervene attacks Plaintiffs' counsel—Miami Entertainment Law Group ("MELG")—on irrelevant and inaccurate procedural grounds. First, Mr. Diamond claims that MELG attorneys failed to disclose in their pro hac vice affidavits the existence of an injunction issued in the guardianship proceeding. However, the affidavits submitted in support of pro hac vice admission accurately state that the attorneys have "never been censured, suspended, disbarred, or denied readmission by any court." That statement is entirely truthful. An injunction entered in a guardianship proceeding—particularly one based on an alleged conflict of interest or the potential for testimony—is not a disciplinary sanction within the meaning of the pro hac vice disclosure requirements. It does not constitute censure, suspension, disbarment, or denial of readmission. Moreover, one of the attorneys Diamond refers to was already licensed in New York and did not seek admission in the guardianship matter at all, rendering his claim meritless.

Second, Diamond claims that one of the MELG attorneys failed to sign the federal complaint. That is demonstrably false. A review of the filed complaint—the only operative version on the docket—shows that both attorneys signed the pleading as required by Rule 11. Mr. Diamond does not identify the source or location of the alleged unsigned version, nor could he, because no such version exists in the Court's official record. These accusations are not only baseless—they are irrelevant to the Rule 24 analysis. Attacks on Plaintiffs' counsel's bar status or litigation strategy do nothing to establish Diamond's right to intervene or his standing to speak on behalf of Ms. Hunter.

Finally, Diamond's invocation of a gag order cannot be wielded as a sword to undermine MELG's standing to bring this case.  MELG's response to the Court's Order to Show Cause (Dkt No. 85) sufficiently argues that MELG is not bound by the sealing and gag orders and the

arguments made therein are incorporated herein by reference. In sum, Diamond's procedural attacks on MELG are inaccurate and should play no role in the Court's analysis of his legally deficient motion to intervene.

VII.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY ROOKER-FELDMAN

Diamond's brief relies on the assertion that this federal action constitutes a collateral attack on the guardianship orders. That is incorrect. While federal courts do not serve as appellate bodies for state court proceedings, they are empowered to hear independent federal claims alleging constitutional violations, even when those arise in the context of ongoing guardianship proceedings. The Second Circuit has emphasized that the *Rooker-Feldman* doctrine only applies where a plaintiff complains of injuries caused by a state-court judgment and invites district court review of that judgment. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).

Here, Plaintiffs do not seek reversal of a final state-court judgment. Rather, they assert independent federal claims for constitutional and statutory violations—including unlawful deprivation of liberty, denial of access to counsel, and a RICO conspiracy—committed by state actors and private parties under color of law. The guardianship proceedings remain ongoing, and no final judgment capable of triggering *Rooker-Feldman* has been entered. Moreover, many of the harms alleged predate the 2024 incapacity adjudication. Thus, contrary to Diamond's assertions in his motion to intervene, this Court unequivocally retains jurisdiction to adjudicate Plaintiffs' civil rights claims. This action does not seek to dissolve or terminate the guardianship as a matter of state law, but rather to vindicate Ms. Hunter's federal constitutional rights that have been violated.

Diamond contends that this civil rights action is premature and may only proceed after the guardianship has been dissolved. That assertion is legally incorrect. Federal courts are not barred from hearing constitutional and statutory claims merely because an underlying state proceeding remains active. To the contrary, courts have long held that ongoing guardianship or custodial proceedings do not preclude federal review where plaintiffs allege systemic violations of federally protected rights under 42 U.S.C. § 1983, the ADA, or RICO. *See Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) ("Federal jurisdiction is not lost merely because a state proceeding is ongoing or touches upon custody, guardianship, or probate.").

To accept Diamond's position—that this action must wait until the guardianship concludes—would turn constitutional litigation into a post hoc exercise. It would mean that the very regime Plaintiffs challenge must be allowed to run its course unopposed, even as it strips Ms. Hunter of rights, agency, and legal voice. Worse still, it would allow that regime to continue indefinitely while it continues to isolate Ms. Hunter, suppress her speech, deny her counsel, and empty her bank account. That is not what *Whitmore*, *Ferreira*, or Rule 17(c)(2) envision. The next-friend doctrine exists precisely to allow access to federal court during periods of legal incapacity—not after the harm has become irreversible.

VIII.    <u>DIAMOND'S RELIANCE ON MS. HUNTER'S ALLEGED STATEMENTS IS MISPLACED</u>

Diamond's attempt to discredit Mr. Hunter's next-friend standing by invoking alleged statements from Ms. Hunter rejecting his assistance must be rejected outright under controlling federal law. Such assertions—especially when made in the context of forced isolation, state-imposed silence, and guardianship coercion—lack reliability and legal force.

Courts have long recognized that statements attributed to individuals under guardianship or state control must be scrutinized for voluntariness and authenticity. Where the government controls who may speak on behalf of a person and deprives that person of other avenues of communication, the risk of coercion and misrepresentation is high. *See Ferreira*, 831 F.3d 803 (7th Cir. 2016). In *Ferreira*, the Seventh Circuit cautioned against uncritically accepting statements attributed to individuals in guardianship or state custody, emphasizing that judicial review must account for the structural imbalance of power and the risks of substituted decision-making. *Id.* at 809. That risk is even more acute here, where the alleged speaker is wholly dependent on the very parties whose misconduct this lawsuit seeks to challenge.

### A. Ms. Hunter's Statements Are Not Voluntary or Reliable.

Any claims that Ms. Hunter opposes this litigation or rejects Mr. Hunter's help must be scrutinized due to (i) her court-imposed isolation; (ii) court-imposed gag orders placed upon her chosen legal counsel, MELG; and (iii) the complete and coercive control exercised by the guardian and the court-appointed advisors over Ms. Hunter's environment and communications. *See Ferreira*, 831 F.3d 803 (7th Cir. 2016). Crucially, Ms. Hunter had not been adjudicated incapacitated at the time these restrictions were imposed. Yet, despite the lack of any lawful incapacity finding before 2024, Ms. Hunter's communications with MELG were blocked, her phone and electronic access were curtailed, and her ability to contact outside parties was suppressed. These measures preemptively deprived her of rights before any due process protections were triggered, violating both her First and Fourteenth Amendment rights.

Under these conditions, statements made or attributed to Ms. Hunter cannot be presumed authentic or voluntary. Courts are not obligated to accept such expressions as valid where they

occur under duress, surveillance, or dependency on court-appointed guardians. The Supreme Court has long emphasized that statements made under custodial influence or coercion are constitutionally suspect. *See Colorado v. Connelly*, 479 U.S. 157, 164–67 (1986); *Jackson v. Denno*, 378 U.S. 368, 376–77 (1964).

### B. Context Confirms Coercion, Not Consent.

Ms. Hunter remains unable to communicate directly with MELG, the counsel of her own choosing prior to the initiation of the guardianship proceeding in February 2022. The guardian, the court, and now Diamond have collectively enforced a communication blackout that has prevented Ms. Hunter from legally challenging her confinement or expressing her will freely. Any statements Diamond now invokes must be presumed to be filtered through agents of the state, who have a vested interest in maintaining control over Ms. Hunter's assets and her voice. Moreover, Diamond's role appears crafted not to advocate on Ms. Hunter's behalf, but to legitimize a process that excludes Ms. Hunter from meaningful legal participation.

Diamond's reliance on Ms. Hunter's alleged preferences is not only legally insufficient—it is ethically flawed. His position depends on statements made in a closed, coercive environment without impartial judicial oversight, due process, or evidentiary safeguards. Such statements cannot defeat a properly filed next-friend action brought on behalf of a confined and voiceless individual. No court should endorse a system where the state first isolates a ward, then uses her alleged statements—filtered exclusively through court-appointed surrogates—to block federal review of her confinement. Under conditions of preemptive isolation and state-imposed silencing, any claimed opposition by Ms. Hunter to this lawsuit or to Mr. Hunter's role must be viewed with extreme caution. The law presumes statements made under duress or deprivation of liberty to be

unreliable, especially where the speaker is entirely dependent on court-appointed fiduciaries for communication. To the extent media coverage reflects statements attributed to Ms. Hunter, such statements are also unreliable under the coercive conditions imposed by the guardianship.

IX.    DIAMOND'S CITATION OF JURISDICTIONAL AND ABSTENTION CASES IS MISPLACED AND IRRELEVANT TO RULE 24 INTERVENTION

Diamond's motion challenges the merits and jurisdictional underpinnings of this action, citing cases such as *Max v. Lissner*, *Galanova v. Portnoy*, *James v. New York*, *Puletti v. Patel*, and *In re Burrus*, among others. However, these cases—many involving abstention doctrines, probate exceptions, or guardianship matters—do not address or control the threshold requirements of Fed. R. Civ. P. 24.[6]

Rule 24 governs procedural rights to intervene and is not the appropriate mechanism for asserting dispositive challenges to the viability of a case. Diamond improperly conflates Rule 24 with doctrines of abstention and jurisdiction. Even if he believes federal jurisdiction is lacking, the appropriate procedural vehicle is a motion to dismiss under Rule 12—not an intervention motion repackaged to challenge purported jurisdictional defects. This procedural sleight-of-hand only reinforces the conclusion that Diamond seeks to derail the litigation, not participate meaningfully. The civil rights claims under 42 U.S.C. § 1983, ADA, and RICO fall squarely within this Court's jurisdiction and courts have consistently held that the merits of the underlying claims are not grounds to grant or deny intervention. *See Donaldson v. United States*, 400 U.S. 517, 529 (1971) ("The question of intervention must be distinguished from the ultimate merits of the claims.");

---

[6] Neither *In re Burrus*, 136 U.S. 586 (1890) nor its progeny—*Max v. Lissner*, *Galanova v. Portnoy*, *James v. New York*, *Puletti v. Patel*, and similar guardianship or domestic-relations cases—advance Diamond's bid for intervention. These domestic-relations cases limit federal jurisdiction over certain family-law merits issues; they do not expand Rule 24. Plaintiffs seek to vindicate federal rights, not alter a state custody decree. These authorities address subject-matter jurisdiction, not intervention rights, and offer no support for Diamond's motion.

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 n.4 (2d Cir. 1986) ("Rule 24 is a procedural device that cannot be used to decide substantive claims or defenses.").

If Diamond believes this action is barred by the *Rooker-Feldman* doctrine, the probate exception, or any form of abstention or lack of subject matter jurisdiction, those arguments must be presented—if at all—through a properly filed motion to dismiss under Rule 12, not as a bootstrapped rationale for intervention. *See United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) (intervention may not be used to circumvent established procedures for raising jurisdictional defenses).

Moreover, the cases cited by Diamond are factually and procedurally distinguishable. Unlike the actions in those cases—where the federal plaintiffs sought direct oversight or reversal of state custody determinations—the Plaintiffs here seek relief under federal civil rights statutes for systemic constitutional violations, which, contrary to Diamond's position, are unquestionably within this Court's jurisdiction. *See Morrison*, 761 F.2d at 246 (5th Cir. 1985) (federal courts retain jurisdiction over civil rights claims even when they implicate state guardianship orders).

In short, Diamond's reliance on these abstention and jurisdictional doctrines is a collateral attack on the merits of Plaintiffs' claims—not a valid justification for intervention. Rule 24 cannot be used to preempt or short-circuit the normal adjudicative process. His motion should be assessed solely under the procedural and substantive standards of Rule 24, and his attempt to convert it into a disguised Rule 12(b)(1) or Rule 12(b)(6) motion should be rejected. Permitting intervention under these circumstances would not only distort the nature of this civil rights case, but would also create a dangerous precedent. It would empower state actors to install conflicted counsel after the fact, in a transparent effort to preemptively block litigation and silence vulnerable individuals.

Such a mechanism would chill future civil rights claims brought by or on behalf of those under guardianship and would frustrate the remedial purposes of 42 U.S.C. § 1983.

## **<u>CONCLUSION</u>**

At its core, this case asks whether a court-appointed system can silence a person first and then speak for her in order to preserve its own authority. The answer must be no. The Constitution does not yield to guardianship procedures crafted to shield constitutional violations from review. Intervention must be denied to preserve the integrity of this Court and the rights of Ms. Hunter, whose voice this lawsuit seeks to restore. Mr. Hunter's motion for next-friend standing is supported by law and fact. If granted, it would render Diamond's intervention unnecessary and legally improper. Until such time, this Opposition is submitted in anticipation of the Court's ruling on standing. Diamond lacks a legally protectable interest, was appointed through a procedurally defective and retroactive order by a conflicted judge, has taken no action to protect Ms. Hunter's liberty, and seeks only to obstruct this civil rights action. His purported interest is derivative, his appointment conflicted, and his intended participation contrary to Ms. Hunter's liberty interests and federal rights. For the foregoing reasons, Diamond's motion to intervene fails to satisfy the procedural and substantive requirements of Rule 24 and Plaintiffs respectfully request that Diamond's motion be denied.

DATED:        August 11, 2025

Respectfully submitted,

*LaShawn Thomas*

LaShawn N. Thomas
MIAMI ENTERTAINMENT LAW GROUP
Email: lthomas@miamientertainmentlawgroup.com

*Celeste McCaw*

Celeste N. McCaw
MIAMI ENTERTAINMENT LAW GROUP
261 North University Drive, Suite 500
Plantation, Florida 33324
Tel: (305) 417-6450
Email: cmccaw@miamientertainmentlawgroup.com

## WORD COUNT CERTIFICATION

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of New York, and the Court's Individual Rules & Practices, the undersigned hereby certifies that this Memorandum of Law contains 8,298 words, excluding the caption, signature block, and this certification. The word count was determined using the word count function of Microsoft Word.


_____
LaShawn N. Thomas


_____
Celeste N. McCaw