UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
WENDY J. WILLIAMS HUNTER, an individual, by
And through her next friend, KELVIN HUNTER; and     :     Case No.: 25-cv-05107 (MMG)
KELVIN HUNTER, an individual,
:
                           Plaintiffs,
:
   -against-
:
SABRINA E. MORRISSEY, *et al.*,
:
                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**REPLY IN SUPPORT OF MOTION TO INTERVENE
ON BEHALF OF W.W.H. UNDER FEDERAL RULE OF CIVIL PROCEDURE 24**

# DIAMOND MCCARTHY LLP
*Counsel to W.W.H.*

15 West 81st Street, Suite 1A
New York, New York 10024
Telephone: 212-430-5400

Allan B. Diamond, Esq.
*adiamond@diamondmccarthy.com*

# **TABLE OF CONTENTS**

**Page**

**ARGUMENT** ................................................................................................................................. 4

1. Either W.W.H. Can Intervene with Mr. Diamond as her Counsel or
   Mr. Diamond Can Intervene on Her Behalf as Her Court-Appointed Fiduciary ........... 5

2. Plaintiff and MELG Cannot Be Next-Friend Fiduciaries .............................................. 8

3. MELG Appears To Have Cited Fake Cases in the Original Opposition ....................... 8

**CONCLUSION** ............................................................................................................................ 11

# TABLE OF AUTHORITES

**Cases**                                                                                                      **Page(s)**

*Bay Casino, LLC v. M/V Royal Star*, No. 17-CV-5540 (DLC),
  2018 WL 4635706 (S.D.N.Y. Sept. 26, 2018) .................................................................................. 9

*Beja v. Immoral Records*, LLC, No. 0-CV-3462,
  2021 WL 3089035 (S.D.N.Y. July 21, 2021) .................................................................................. 9

*Carty v. Lassiter*,
  408 F.3d 288 (5th Cir. 2005).................................................................................................... 1, 9

*K.O. v. Jesensky*, No. 21-CV-3416 (AT),
  2022 WL 949798 (S.D.N.Y. Mar. 29, 2022).................................................................................. 9

*Mata v. Avianca, Inc.*,
  678 F. Supp. 3d 443 (S.D.N.Y. 2023) ....................................................................................... 2, 9

*Max v. Lissner*,
  No. 22-CV-5070 (VEC), 2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ................................10, 11

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
  638 F. Supp. 3d 333 (S.D.N.Y. 2022) ........................................................................................... 2

Morrison v. City of Baton Rouge,
  761 F.2d 242 (5th Cir. 1985).................................................................................................... 10

*R.L. ex rel. Long v. Saddler*,
  No. 12 C 1031, 2012 WL 5258648 (N.D. Ill. Oct. 23, 2012)................................................. 3, 8

**Statutes**

42 U.S.C. § 1983.................................................................................................................. 10

**Rules**

Federal Rule of Civil Procedure 24 ............................................................................................ 1, 4

ii

Plaintiff's opposition to the Motion to Intervene ("Motion") should concern the Court. One of the main points argued in the Motion was that W.W.H.'s ex-husband cannot be a 'next friend' fiduciary at least because of on-going litigation between him and W.W.H. and that MELG and its attorneys cannot be counsel to any 'next friend' because of conflicts of interest as well as the Guardianship Court's injunction against them. In response, on August 8, 2025, Plaintiff stated:

> Further, courts applying Rule 17(c)(2) have repeatedly held that the presence of a limited financial interest—particularly when arising from prior unrelated litigation—does not disqualify a next friend from serving. *See Carty v. Lassiter*, 408 F.3d 288, 291 (5th Cir. 2005) (a next friend may proceed despite past litigation involving the ward).

[ECF 96 ("Original Opposition")]. On August 11, 2025, Plaintiff filed a Corrected Opposition in support of its opposition claiming that:

> Plaintiffs are filing this corrected memorandum of law in an abundance of caution to ensure compliance with Local Civil Rule 7.1. Accordingly, a table of contents and table of authorities has been added to the memorandum of law, case citations and references to same have been corrected (if needed), and the filing has been retitled.

[ECF 98-1 ("Corrected Opposition")]. In the Corrected Opposition, MELG deletes the *Carty* citation and changes the entire thesis of the argument: "Further, the presence of a limited financial interest—particularly when arising from prior unrelated litigation—should not disqualify a next friend from serving." *Id.* Absurd. Which courts "have **repeatedly** held" that the presence of a financial interest – limited or otherwise – does not disqualify a person from acting as a next-friend fiduciary? *Carty* did not so hold either arguably or inferentially. *Carty* appears not to exist!

Other cases deleted from the Original Opposition, as reflected in the Corrected Opposition, also appear to be hallucinated citations to non-existent cases or citations tied to quotations that are not in the cited case. This district has already sanctioned one of MELG's attorneys for advancing

1

positions contrary to established law. *See McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 638 F. Supp. 3d 333, 339-41 (S.D.N.Y. 2022) (sanctioning Celeste McCaw, Miami Entertainment Law Group, for filing frivolous motions); *id.,* No. 1:22-cv-1138-GHW, 2023 WL 4422495, at *1 (S.D.N.Y. July 10, 2023) (imposing $24,540.00 in monetary sanctions following submission of opposing counsel's attorneys' fees request). Continuing to assert that W.W.H.'s ex-husband can act as her next-friend fiduciary in the circumstances of this case and considering the allegations contained in the complaint is grounds for sanctions.

As explained below, the Corrected Opposition did not catch or fix all the problems in the Original Opposition. Forcing counsel and the court to double check every citation for existence and basic accuracy reflects the problems associated with using unreviewed briefs generated with artificial intelligence, which must be what MELG did here. Judge Castel made the following point before sanctioning attorneys:

> Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

*Mata v. Avianca, Inc*., 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023). No matter that MELG tried to sweep the issue under the rug by "correcting citations," the harm was done and continues to be felt.

Plaintiff also makes other baseless allegations that the undersigned is acting in bad faith to promulgate and profit off the guardianship system at W.W.H.'s expense and is conflicted because

of his appointment. The undersigned filed a letter with the Court on its public docket explaining his representation of W.W.H. and the problems with this case.  The Court, in a public minute entry, invited the undersigned to file a motion to intervene.  The undersigned did so to explain that W.W.H. selected him to be her counsel and that Guardianship Court appointed him for that purpose following the statutory prerequisites for that to happen.  *See* NY Ment. Hygiene L. § 81.10(a) (Counsel).  Following the statutory prerequisites to act on W.W.H.'s behalf and in her interest does not bar or disqualify this intervention or create a conflict.

Whether mandatory or permissive, this intervention is necessary to prevent conflicted persons and enjoined attorneys from prosecuting a case in W.W.H.'s name against her wishes that will be detrimental to the strategies and actions currently being implemented and taken in the Guardianship Court related to modification of that guardianship and that will be unsuccessful out of the gate – probably at W.W.H.'s expense if allowed to proceed.  Persuasive authority exists for allowing such interventions for these purposes. *See R.L. ex rel. Long v. Saddler*, No. 12 C 1031, 2012 WL 5258648, at *2–3 (N.D. Ill. Oct. 23, 2012) (allowing guardian to intervene because real party in interest did not want the case to proceed and dismissing case under *Rooker/Feldman*).

If the Court grants the Motion, the undersigned intends to seek to have all causes of action brought in W.W.H.'s name non-suited and dismissed so that the focus of W.W.H.'s rights can stay on the state court guardianship case.  Doing so does not preclude the undersigned or any other appropriate person from seeking other remedies later and no rational justification exists for allowing this case to proceed as styled to assert the claims in the complaint on behalf of W.W.H. only at this time. Claims not being asserted on W.W.H.'s behalf, but solely on behalf of Kelvin Hunter, personally, or otherwise, are not the subject of this Motion at this time.

3

If the Court needs to test the veracity of any statement from the undersigned, the undersigned is ready and willing to submit any documents, transcripts and court orders *in camera* to the Court for the Court's review provided MELG does not get access to them. If the Court is inclined against allowing the undersigned to appear for W.W.H. or intervene under Rule 24 on her behalf to seek voluntary dismissal of the claims brought in her name, the undersigned respectfully requests that the Court keep this case stayed pending a response to an order that shows cause why:

    1.    W.W.H.'s ex-husband should not be disqualified as a next-friend fiduciary based on a conflict of interest;

    2.    MELG and its attorneys should not be disqualified from representing any next-friend in this case given the MELG Injunction, apparent conflicts of interest, and its submission of a memorandum of law that included hallucinated cases or that misquoted or misrepresented cases and their holdings;

    3.    This Court should not dismiss the claims brought on W.W.H.'s behalf under *Rooker/Feldman*, *Younger,* and *Colorado River* and

    4.    This Court should not dismiss the claims against the Guardianship Court, its personnel, and the various other professionals named in the complaint as barred by immunity doctrines such as judicial immunity and quasi-judicial immunity.

W.W.H. should not bear the risk that service of the complaint on the defendants will result in meritorious Rule 12 motions that she might ultimately have to finance when MELG loses.

## **ARGUMENT**

Plaintiff's opposition tries to make two main arguments: (1) the undersigned cannot intervene without an interest in the litigation and is otherwise conflicted and (2) Plaintiff and MELG can adequately represent W.W.H.'s interests. Each is taken in turn.

1. **Either W.W.H. Can Intervene with Mr. Diamond as her Counsel or Mr. Diamond Can Intervene on Her Behalf as Her Court-Appointed Fiduciary.**

Plaintiff filed a complaint on behalf of W.W.H. that alleges W.W.H. should not be – and should never have been - subject to guardianship and seeks damages against a plethora of court officers, personnel, and professionals for allegedly initiating and maintaining the guardianship. Mr. Diamond represents that W.W.H. not only selected him as her counsel and does not want this litigation to proceed but also that Mr. Diamond was appointed by the Guardianship Court on April 2, 2025, along with Peter Strauss, as lead counsel to W.W.H in those proceedings. Plaintiff now asserts that the Court should view W.W.H.'s statements concerning her wishes with suspicion. The positions asserted in the complaint and the positions asserted in the opposition are difficult to reconcile. Notwithstanding the allegations in the complaint, the legal fact remains that W.W.H. is under *temporary* guardianship and cannot take legal action on her own. Nothing untoward should be inferred from Mr. Diamond's recognition of this currently existing legal fact. Because of that fact, Mr. Diamond has sought intervention in his capacity as the real party in interest's court-appointed counsel.

To stop that from happening, Plaintiff first argues that the Motion fails for timeliness. But it appears that at the time Mr. Diamond filed his Motion after this Court invited him to do so, not a single defendant had been served with summons. On these facts, the Motion is not untimely.

Plaintiff next argues Mr. Diamond is a liar that filed the Motion in bad faith with a backdated order of appointment. Mr. Diamond has already explained the circumstances under which he became appointed W.W.H.'s counsel, which occurred on the record in a sealed proceeding, the transcript of which should not be made public and that MELG is barred from receiving. That Order from the Guardianship Court occurred on the record with various other parties and counsel present in a Court conference/hearing ordered by the Guardianship Court on

5

April 2, 2025. Mr. Diamond will submit whatever documents the Court wishes to see *in camera*. The assertion and allegation that any "back-dating" of a court appointment occurred by anyone yet alone the Justice of the Supreme Court overseeing the Guardianship is far from an entertaining bit of sophistry, it is categorically and demonstrably false, irresponsible and defamatory.

Plaintiff continues on with unsubstantiated allegations like "Mr. Diamond's interest is adverse to Ms. Hunter's rights. His objective is not to vindicate her liberty, but to preserve the very structure that Plaintiffs contend unlawfully stripped it away." Plaintiff and MELG present no evidence of such an implausible and insulting allegation. Plaintiff and MELG appear to suggest that Mr. Diamond's appointment somehow makes him adverse to W.W.H.'s interests. Plaintiff and MELG state that the Court should view W.W.H.'s statements against this case with suspicion and that the fact of Mr. Diamond's appointment makes him unaligned with W.W.H.'s interests. But the appointment procedure exists to protect the very people in W.W.H.'s circumstances. This is precisely the appropriate procedure for becoming legal counsel to an AIP under New York's Mental Hygiene Law. *See* NY Ment. Hygiene L. § 81.10(a) (Counsel). Nothing untoward follows from following these rules and statutes. In the world Plaintiff and MELG live, W.W.H.'s statements against this case should be viewed as evidence in support of its maintenance and only lawyers that have flaunted Court orders and statutory rules can bring them. Such cannot be the case.

Plaintiff and MELG next state that Mr. Diamond and Mr. Strauss have not taken any steps to "advocate for W.W.H.'s rights or stated preferences. They have not filed for habeas corpus to challenge her confinement, asserted any claim on her behalf to vindicate her liberty, or petitioned for reinstatement of her right to counsel of choice." 98-1 at 17. But Plaintiff and MELG do not know what is happening in the Guardianship Court, do not know what Mr. Diamond and Mr. Strauss actually have done and/or advocated in the Guardianship proceeding, or know what Mr.

6

Diamond and Mr. Strauss are working to accomplish or plan to do on W.W.H.'s interests. And they have no right to know. W.W.H.'s personal health, medically, psychologically, and otherwise are a matter of the utmost privacy under federal and state laws, not to mention a Court sealing order prohibiting the disclosure of any such information without Court approval. As far as advocating for W.W.H.'s stated preferences, it is W.W.H.'s stated preference that this litigation stop as to her involvement at this time. Mr. Diamond and Mr. Strauss are W.W.H.'s counsel of choice, even if Plaintiff and MELG do not like that fact. Plaintiff and MELG's uniformed disagreement as to what is being done to vindicate W.W.H.'s interests and the timing of those actions does not give an ex-husband and enjoined entertainment lawyers standing to bring this next-friend lawsuit. MELG and Plaintiff have no idea what is going on in the guardianship case and cannot leverage the private and sealed nature of guardianship proceedings to force disclosure of attorney's work product, attorney mental impressions, litigation strategy, or the like.

Plaintiff and MELG also suggest that the undersigned's failure to bring an ill-conceived complaint like the one they filed is evidence that Mr. Diamond is not acting on W.W.H.'s best interests and that Plaintiff and MELG are in the best position to represent W.W.H. Mr. Diamond does not seek to extinguish any claims that W.W.H. might have – he seeks to nonsuit the claims in this case because they are jurisdictionally infirm, brought by conflicted parties and attorneys, and filed at a time that would be detrimental to W.W.H.'s interests in the guardianship proceedings. Nothing mandates that the claims in the complaint be brought just this second and in this forum. In fact, as previewed, the overwhelming case law on the subject counsels against bringing these claims in this forum at this time.

Plaintiff and MELG also argue that Mr. Diamond is conflicted by suggesting that the cost of their ill-conceived litigation might shift onto W.W.H. and that making such statements reveals

his defense of a corrupt system. Mr. Diamond's point – which seems lost on Plaintiff and MELG – is that forcing the guardian and the other named professionals to obtain counsel and defend this lawsuit could shift costs to W.W.H. if those defendants win on jurisdictional grounds or on immunity grounds.

Courts have allowed intervention for the purposes Mr. Diamond seeks to intervene, and Plaintiff and MELG have not presented the Court with any sound legal basis to deny his intervention. *See R.L. ex rel. Long v. Saddler*, No. 12 C 1031, 2012 WL 5258648, at *2–3 (N.D. Ill. Oct. 23, 2012). To the extent **the Court** has any questions, Mr. Diamond has no problem submitting documents *in camera* for the Court to review.

## 2. Plaintiff and MELG Cannot Be Next-Friend Fiduciaries.

As previewed in the preliminary statement, without legal support, Plaintiff and MELG argue that the Court should overlook the financial interests Plaintiff has that are adverse to W.W.H. in order to allow Plaintiff to sue in her name and represent her interests here. Such a conflict of interest disqualifies Plaintiff, as set forth in the Motion. Plaintiff would in this case have W.W.H. admit that she owes him money when he has sued her to recover those funds in another live proceeding. Such a position disqualifies Plaintiff from being W.WH.'s next friend. Furthermore, because of the MELG Injunction, MELG cannot represent any next-friend fiduciary or act on W.W.H.'s behalf of on behalf of someone representing her interests.

## 3. MELG Appears To Have Cited Fake Cases in the Original Opposition

In their Original Opposition, MELG cites many cases that do not appear to exist and uses quotations that do not appear to be from the cases MELG cited. MELG also appears to have attempted to cover up this problem by referring to the Corrected Opposition as merely correcting

8

citations. The Court can judge for itself, but the differences between the Original and Corrected Opposition are material, concerning, and call into question MELG's ability to proceed in this litigation as reliable officers of the Court. The Court should review all the cases and sentences deleted or changed from the Original Opposition, but the undersigned notes that it cannot locate the following cases, citations, and quotations:

- "*See Beja v. Immoral Records*, LLC, No. 20-CV-3462, 2021 WL 3089035, at *5 (S.D.N.Y. July 21, 2021) ("The Court denies the motion to intervene because the proposed intervenor did not comply with Rule 24(c)'s requirement to attach a pleading."); *Bay Casino, LLC v. M/V Royal Star*, No. 17-CV-5540 (DLC), 2018 WL 4635706, at *3 (S.D.N.Y. Sept. 26, 2018) (denying intervention where the movant "failed to attach a pleading, as required by Rule 24(c)" and instead "made vague references" to interests)." [ECF 98-1 at 16].

- "*K.O. v. Jesensky*, No. 21-CV-3416 (AT), 2022 WL 949798, at *4 (S.D.N.Y. Mar. 29, 2022) (a next friend need not be disqualified solely because of a financial tie, absent actual and material conflict)." [98-1 at 22].

- "*Carty v. Lassiter*, 408 F.3d 288, 291 (5th Cir. 2005) (a next friend may proceed despite past litigation involving the ward)." [98-1 at 33].

While MELG filed a Corrected Opposition that redlines the deletions of these cases from the Original Opposition, the Original Opposition's use of what appears to be fake cases and a brief generated in large part by artificial intelligence is concerning. The Court can judge for itself whether MELG's statement that it filed the Corrected Opposition to "correct" citations is an appropriate and candid disclosure. But the initial Rule 11 failure of submitting a brief with faulty citations and then the less than candid attempt to correct that brief is damaging. *Mata,* 678 F. Supp. at 448–49.

### 4. MELG's Corrected Opposition Still Contains Problematic Citations.

MELG appears not to have caught or corrected all the problematic citations in its Original Opposition. In the Corrected Opposition, MELG maintains that:

> Federal courts are not barred from hearing constitutional and statutory claims merely because an underlying state proceeding remains active. To the contrary, courts have long held that ongoing guardianship or custodial proceedings do not preclude federal review where plaintiffs allege systemic violations of federally protected rights under 42 U.S.C. § 1983, the ADA, or RICO. See *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) ("Federal jurisdiction is not lost merely because a state proceeding is ongoing or touches upon custody, guardianship, or probate.").

[98-1 at 26]. MELG uses *Morrison* again in the Corrected Opposition:

> Moreover, the cases cited by Diamond are factually and procedurally distinguishable. Unlike the actions in those cases—where the federal plaintiffs sought direct oversight or reversal of state custody determinations—the Plaintiffs here seek relief under federal civil rights statutes for systemic constitutional violations, which, contrary to Diamond's position, are unquestionably within this Court's jurisdiction. See *Morrison*, 761 F.2d at 246 (5th Cir. 1985) (federal courts retain jurisdiction over civil rights claims even when they implicate state guardianship orders)

[ECF 98-1 at 30]. But the *Morrison* case does not appear to have the quotation used in the first parenthetical to that case. *Morrison* does not even appear to have anything to do with guardianship.

Moreover, the cases Mr. Diamond cited are near identical to this case, and no matter how they characterize the complaint now, Plaintiff and MELG cannot get around the *Roooker/Feldman* problem. The Court need only turn to the complaint's prayer and compare it to *Max v. Lissner*:

> Ms. Max argues, however, that the *Rooker-Feldman* doctrine does not apply because she seeks relief based on Lissner's "personal actions," not to "attack[ ] judgments issued by the guardianship court, or the existence of the guardianship." But "a federal suit is not free from *Rooker-Feldman*'s bar simply because the suit proceeds on legal theories not addressed in state court." The gestalt of Ms. Max's IIED claim focuses on alleged injuries caused by Lissner as she executed the state court's order appointing her as Max's personal needs guardian.
>
> . . . .
>
> . . . By alleging that the very decisions approved by the guardianship court constitute the tort of IIED against Plaintiff, Plaintiff runs afoul

10

> of *Rooker-Feldman*: she "(i) invites district court review and rejection of state court judgments that were (ii) rendered before this Action commenced, (iii) with respect to which [s]he is the losing party, and (iv) complaining of injuries that resulted from such judgments." Because the adjudication of Plaintiff's IIED claim would essentially put this Court in the position of second guessing the decisions of the guardianship court — a position that the *Rooker-Feldman* doctrine forbids — the Court lacks jurisdiction over Plaintiff's IIED claim. Defendant's motion to dismiss that claim with prejudice is granted.

*Max v. Lissner*, No. 22-CV-5070 (VEC), 2023 WL 2346365, at *6–7 (S.D.N.Y. Mar. 3, 2023) (internal case and record citations omitted).  Same here. In response that clear authority, MELG continues to press a case that does not stand for the proposition it asserts.

## CONCLUSION

The undersigned respectfully requests that the Court grant the Motion.  Should the Court be inclined not to grant it, the undersigned respectfully requests that the Court keep proceedings stayed and issue an order that compels Plaintiff and MELG to answer the items outlined in the Preliminary Statement.

Dated: New York, New York
       August 18, 2025

>                              Respectfully submitted,
>
>                              **DIAMOND MCCARTHY LLP**
>
>                              By: _____
>                                   Allan B. Diamond, Esq.
>                              15 West 81st Street, Suite 1A
>                              New York, New York 10024
>                              Telephone:  212-430-5400
>                              *adiamond@diamondmccarthy.com*
>
>                              *Court-Appointed Counsel to W.W.H.*

11

## CERTIFICATE OF COMPLIANCE

I, **ALLAN B. DIAMOND**, hereby certify that, pursuant to Rule II.B.2 of the Individual Rules & Practices of the Honorable Margaret M. Garnett, the foregoing Memorandum of Law contains a total of 3,496 words (as measured by the word processing system on which it was prepared), inclusive of point heading and footnotes and exclusive of pages containing the table of contents, table of authorities and this Certificate.

Dated: New York, New York
August 18, 2025

_____
**ALLAN B. DIAMOND**