USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WENDY J. WILLIAMS HUNTER, et al.,
Plaintiffs,

-against-

SABRINA E. MORRISSEY, et al.,
Defendants.

25-CV-05107 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiffs Wendy J. Williams Hunter, by and through her asserted next friend, Regina Giszpenc, and Kelvin Hunter bring this action against various Defendants in connection with a New York State Article 81 Guardianship proceeding (the "Guardianship Proceeding").[1] Plaintiffs allege that Defendants engaged and continue to engage in a pattern of constitutional, statutory, and fiduciary violations perpetrated under the guise of a wrongfully-initiated and unlawfully-maintained guardianship that has resulted in the deprivation of Ms. Williams Hunter's liberty, property, and due process rights. Plaintiffs seek declaratory, injunctive, and compensatory relief and bring claims under 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et*

[1] Defendants are Sabrina E. Morrissey; Morrissey & Morrissey LLP; Wells Fargo Clearing Services, LLC ("Wells Fargo"); Lori Schiller; American Express Company; Bressler, Amery & Ross, P.C.; David Pikus; Debmar-Mercury LLC; Bernie Young Entertainment Enterprises, LLC; Burnett M. Young; Leah Abraham; Abrams Fensterman, LLP; Carolyn N. Wolf; Sacks, Press & Lacher P.C.; Gary Press; William Selby; Shawn Zanotti; Rami Kaminski M.D. P.C.; Rami Kaminski; Solomon's Law Office, P.C.; Phillip A. Solomon; Rafferty & Redlisky LLP; Linda Redlisky; Law Offices of Salami-Oyakhilome, P.C.; Sadatu Salami-Oyakhilome; Justice Adam Silvera; Justice Lisa A. Sokoloff; the Office of the Attorney General of New York (together with Justices Silvera and Sokoloff, the "State Defendants"); Atria Senior Living, Inc.; Coterie Luxury Senior Living; Amanda Clears; and John/Jane Does 1-20.

*seq*.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681s-2 and 1681i; the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§ 6802–6803; and New York common law.

Now before the Court are Ms. Giszpenc's motion to be appointed "next friend" on behalf of Ms. Williams Hunter, as well as numerous ancillary motions. For the reasons that follow, Ms. Giszpenc's motion is DENIED, and the claims purported to be brought on behalf of Ms. Williams Hunter are DISMISSED with prejudice.

## BACKGROUND

### I. THE GUARDIANSHIP PROCEEDING

In February 2022, Defendant Wells Fargo initiated the Guardianship Proceeding [redacted] The Guardianship Court also issued an order sealing the records in the Guardianship Proceeding and "restraining all parties, counsel, agents and employees thereof from discussing this case with the media or disclosing court documents to any third-party." Dkt. No. 86-2. In September 2025, the Guardianship Court [redacted]

During the pendency of the Guardianship Proceeding, Ms. Williams Hunter [redacted] Dkt. No. 86-1. The Guardianship Court held a hearing in which [redacted] and appointed

Messrs. Diamond and Strauss as counsel to Ms. Williams Hunter in the Guardianship Proceeding on April 2, 2025. *Id.*

## II. THE INITIAL COMPLAINT AND MR. HUNTER'S NEXT FRIEND MOTION

On June 17, 2025, attorneys at the Miami Entertainment Law Group ("MELG") initiated this action by filing a complaint on behalf of Ms. Williams Hunter's ex-husband, Kelvin Hunter. Dkt. No. 1. The initial complaint sought personal relief for Mr. Hunter, while also expressly seeking to challenge and overturn various aspects of the State Guardianship Proceeding concerning Ms. Williams Hunter. *See id.* ¶¶ 6, 18 ("Mr. Hunter's individual claims arise from the financial and emotional harm he has suffered which can be directly traced to Defendants' fraudulent initiation and unlawful administration of the guardianship proceeding."). The complaint, at bottom, alleged a vast conspiracy flowing from the fraudulent imposition and unlawful maintenance of Ms. Williams Hunter's guardianship involving financial institutions, attorneys, law firms, entertainment industry professionals, assisted living facilities, public officials, and judicial officers. *See id.* ¶ 250; *see also* AC ¶ 256 ("Defendants . . . act[ed] in concert for the common purpose of financially exploiting, isolating, and controlling Ms. Hunter in order to obtain control over Ms. Hunter's property and income streams by falsely asserting her incapacity, securing court-ordered guardianship, and diverting her earnings through coordinated acts of fraud, obstruction, and financial exploitation."). At the same time, Mr. Hunter moved for appointment as Ms. Williams Hunter's next friend under Rule 17(c)(2). Dkt. No. 2.

On July 29, 2025, Mr. Diamond moved to intervene on Ms. Williams Hunter's behalf, arguing that absent intervention, this case would proceed to Ms. Williams Hunter's detriment and her interests would not be adequately protected. Dkt. No. 94 at 3.

In a bench ruling issued October 9, 2025, the Court denied Mr. Hunter's motion for next friend recognition. Dkt. No. 191 ("Oct. 9, 2025 Tr.") at 20:14–17. The Court found that Mr. Hunter failed to meet his burden to show that he was truly dedicated to Ms. Williams Hunter's best interests because of his "financial stake in the outcome of this case," and "serious doubt" as to his claim that "there are no other individuals seeking to represent Ms. Williams Hunter's interests in connection with the guardianship proceedings." *See id.* at 20:14–23:4. Given the denial of the next friend motion, the Court held Mr. Hunter lacked standing to pursue claims based on Ms. Williams Hunter's alleged injuries. *See id.* at 24:3–9. However, "as to those injuries that Mr. Hunter asserts are personal to him," the Court granted leave to amend, "solely on behalf of himself asserting only claims that he has standing to bring." *Id.* at 24:10–15. The Court also denied Mr. Diamond's motion to intervene as moot without prejudice to renew, if he determined it was in Ms. Williams Hunter's best interests to do so after the amended complaint was filed. *Id.* at 24:25–25:4.

## III. THE AMENDED COMPLAINT AND MS. GISZPENC'S NEXT FRIEND MOTION

Notwithstanding the Court's clear directive to amend the complaint "solely on behalf of [Mr. Hunter] asserting only claims that he has standing to bring," MELG filed an amended complaint on behalf of both Mr. Hunter and Ms. Williams Hunter on November 10, 2025. The Amended Complaint asserts largely identical claims, *compare* AC ¶¶ 147–657, *with* Dkt. No. 1 at ¶¶ 146–610, but substitutes Ms. Giszpenc in place of Mr. Hunter as Ms. Williams Hunter's proposed next friend. *See* AC ¶ 16 & n.6 ("All claims asserted on behalf of Ms. Hunter are now brought through Ms. Giszpenc.").

The Amended Complaint also seeks nearly identical relief, including: (i) a declaration that the initiation and maintenance of the guardianship violated Ms. Williams Hunter's

constitutional rights, the guardianship was procedurally and substantively deficient and void ab initio, the interference with the marital settlement agreement between Mr. Hunter and Ms. Williams Hunter violated federal and state law, and federal judicial oversight or ancillary monitoring is warranted, *see* AC at 135; (ii) a permanent and mandatory injunction enjoining enforcement of the purportedly unlawful guardianship, ordering Ms. Williams Hunter's immediate release, enjoining Defendants from interfering with the marital settlement agreement, vacating Ms. Morrissey's appointment as guardian and appointing a neutral fiduciary, *see id.* at 135–36; and (iii) additional equitable and legal relief including an order that Justice Sokoloff be recused from any further proceedings related to the underlying guardianship, *see id.* at 136.

Ms. Giszpenc concurrently filed a motion for leave to proceed as Ms. Williams Hunter's next friend. Dkt. No. 197 (the "Motion" or "Mot."). Ms. Giszpenc argues next friend appointment is warranted because "Ms. Hunter is currently unable to protect her own interests due to the effects of [the] guardianship, which Ms. Giszpenc alleges was based on fraudulent misrepresentations and conducted without proper due process." *Id.* at 5. The sole support for the Motion is a declaration from Ms. Giszpenc herself, claiming that she has been a "childhood friend and trusted confidante of Wendy J. Williams Hunter . . . for over forty years." *Id.* ¶ 3. The declaration further avers that Ms. Giszpenc has a "close and continuing relationship with Ms. Hunter," and is "acting in good faith and solely in Ms. Hunter's best interest in pursuing this litigation." *Id.* ¶ 12.

All Defendants oppose the Motion. *See* Dkt. Nos. 224 ("WF Opp."), 227, 229 ("Morrissey Opp."), 231 ("State Opp."), 232, 234, 235, 237, 238, 239, 240, 241, 243, and 244.[2] Plaintiffs filed their reply brief on March 2, 2026. Dkt. No. 248 ("Reply").

On January 8, 2026, Mr. Diamond also renewed his motion to intervene. Dkt. No. 221; *see also* Dkt. No. 222 at 1–2 (stating Ms. Williams Hunter "again does not want her ex-husband's lawyers representing her interests through the purported 'next friend' and has instructed the undersigned counsel to intervene to stop this lawsuit from proceeding in her name and on her behalf"). In support of his motion, Mr. Diamond attached a sworn declaration from Ms. Williams Hunter in which she avers that she "did not consent to the filing of the Amended Complaint," "[does] not want Ms. Giszpenc acting on [her] behalf," and "[does] not want this lawsuit to proceed. Dkt. No. 221-1 ("Williams Affidavit") ¶¶ 4–5.

## DISCUSSION

### I. APPLICABLE LAW

Rule 17(c) empowers district courts to authorize "an incompetent person who does not have a duly appointed representative [to] sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2).[3] The rule is "permissive and not mandatory." *Ad Hoc Comm. of Concerned Tchrs. v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989).[4] Whether a court should exercise this discretion depends on "the facts and circumstances of each case." *Id.*

---

[2] Several Defendants join, adopt, and incorporate by reference the arguments and authorities set forth in the opposition briefs filed by Wells Fargo and Ms. Morrissey. *See* Dkt. Nos. 224 and 229.

[3] Prior to the adoption of Rule 17(c), there was a distinction between a "next friend" and a "guardian ad litem." *See* Wright & Miller, Federal Practice & Procedure § 1572. "[T]he terms are now used interchangeably." *Bowen v. Rubin*, 213 F. Supp. 2d 220, 222 n.5 (E.D.N.Y. 2001); *see also von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1293 (S.D.N.Y. 1986) ("[T]here is no substantial difference between a 'guardian *ad litem*' and a 'next friend.'").

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

at 31. In making that determination, the court must "conduct an inquiry into the application of any [representative] seeking to represent [an incompetent person's] interests as 'next friend.'" *Id.*

## II. THE NEXT FRIEND MOTION IS DENIED AND ALL CLAIMS PURPORTING TO BE BROUGHT ON BEHALF OF MS. WILLIAMS HUNTER ARE DISMISSED

Defendants advance various arguments in support of denying the Motion,[5] but the Court need only address a subset of these to reach that conclusion. The Motion must be denied because Ms. Giszpenc was required to, but did not, seek permission from the Guardianship Court to sue Ms. Morrissey, and even if she had obtained permission, Ms. Giszpenc has not met her burden of establishing next friend standing. Moreover, the claims purportedly brought on behalf of Ms. Williams Hunter are dismissed *sua sponte* because the *Rooker-Feldman* and *Younger* abstention doctrines bar this Court from adjudicating those claims.

### A. Ms. Giszpenc Was Required to, But Did Not, Seek Permission to Sue as Ms. Williams Hunter's Next Friend

Defendants argue that the Motion "runs into a threshold obstacle imposed by New York law: any individual seeking to sue a guardian must first seek permission from the Guardianship Court." Morrissey Opp. at 8. According to Defendants, Ms. Giszpenc's failure to comply with this black-letter requirement bars the present Motion. The Court agrees.

---

[5] Defendants argue the Motion should be denied because (i) it is barred by the law of the case doctrine, *see* WF Opp. at 4–8; (ii) it violates the Court's October 9, 2025 Order, and Federal Rule of Civil Procedure 16, *see id.* at 8–10; (iii) Ms. Giszpenc failed to satisfy the prerequisite of seeking and receiving permission from the Guardianship Court to initiate this suit, *see* Morrissey Opp. at 8–10; (iv) it contravenes the *Rooker-Feldman* and *Younger* abstention doctrines, *see id.* at 10–16; (v) Ms. Giszpenc failed to satisfy her evidentiary burden to justify next-friend litigation under *Whitmore*, *see id.* at 16–21; and (vi) Plaintiffs' counsel's conflict of interest bars simultaneous representation of both Mr. Hunter's interests and Ms. Hunter's interests, *see id.* at 21–25.

A plaintiff's capacity to sue is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). Under New York law, an individual declared legally incompetent can only appear by his or her guardian. *See* N.Y. C.P.L.R. § 1201; *see also Brewster v. John Hancock Mut. Life Ins. Co.*, 720 N.Y.S.2d 462, 462 (1st Dep't 2001) (holding that an adult incapable of adequately prosecuting or defending his or her rights shall appear by his or her guardian). Additionally, "[o]nce a guardian is appointed for an incapacitated person, litigation against . . . the guardian as representative of the incapacitated person should not proceed without the permission of the court which appointed the guardian." *Wright v. Rickards*, 942 N.Y.S.2d 153, 154 (2d Dep't 2012); *see also Terry v. Cty. of Suffolk, N.Y.*, 654 F. App'x 5, 6 (2d Cir. 2016) (affirming dismissal of a plaintiff's claims against a guardian for failure to obtain permission to sue from the court that appointed the guardian). New York cases so holding are legion and date back over a century. *See, e.g.*, *Carter v. Beckwith*, 128 N.Y. 312, 316 (N.Y. 1891); *Smith v. Keteltas*, 50 N.Y.S. 471, 472 (1st Dep't 1898); *Wright*, 942 N.Y.S.2d at 154; *Shatsky v. Sea Gate Ass'n*, 172 N.Y.S.2d 947, 949 (Sup. Ct. 1958); *In re Linden-Rath*, 729 N.Y.S.2d 265, 267 (Sup. Ct. 2001).

Ms. Giszpenc does not deny that she did not seek leave from the Guardianship Court to commence this action against Ms. Morrissey. Instead, she contends that while New York law may require permission before suing a guardian in state court over acts taken in a representative capacity, this case presents a different question—namely, "whether a federal court may recognize a next friend under Rule 17(c) to ensure adequate representation of an incapacitated litigant in a federal action where the adequacy and alignment of the guardian and appointed counsel are themselves at issue." Reply at 7. As an initial matter, Ms. Giszpenc fails to cite a single case—nor any legal principle at all—supporting such distinction. To the contrary,

Defendants cite persuasive authority where federal courts dismissed substantially similar claims as the ones asserted by Plaintiffs here—*i.e.*, claims challenging a court-appointed guardian's exercise of his guardianship rights as violating federal and state law—for failure to obtain permission from the court that appointed the guardian. *See, e.g.*, *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 442 n.8 (S.D.N.Y. 2020); *Gitzis by Galanova v. Nozhnik*, No. 19-CV-07273 (PKC) (RLM), 2020 WL 1989285, at *3 (E.D.N.Y. Apr. 27, 2020). Moreover, while Ms. Giszpenc asserts that this action is not "an attempt to relitigate the guardianship adjudication itself," Reply at 7, that is precisely the relief she seeks on behalf of Ms. Williams Hunter: a declaration that the guardianship was "procedurally and substantively deficient and void ab initio," AC at 135, as well as a "permanent injunction prohibiting Defendants from continuing to enforce, administer, or benefit from any orders, restraints, or fiduciary arrangements arising from or related to the unlawful guardianship imposed upon Ms. Hunter," *id.* ¶ 657.

Accordingly, because Plaintiffs were required under New York law to seek permission from the Guardianship Court before suing Ms. Morrissey in her capacity as Ms. Williams Hunter's guardian yet failed to comply with that prerequisite, the Motion is denied as to any claim against Ms. Morrissey.

**B. Ms. Giszpenc's Motion Fails to Meet the Requisite Evidentiary Standard**

Even assuming *arguendo* that Ms. Giszpenc obtained the Guardianship Court's permission to sue Ms. Morrissey, the Motion must be denied as to claims against all Defendants because Ms. Giszpenc fails to meet her burden of establishing next friend standing.

While a court may "appoint a 'next friend' to bring [an] incompetent party's claims in court," that "does not mean . . . that just anyone may assume the mantle of next friend." *Doe v. Hochul*, 139 F.4th 165, 177 (2d Cir. 2025). As the Supreme Court explained in *Whitmore v. Arkansas*, "there are 'at least two firmly rooted prerequisites for "next friend" standing.'" *Id.*

(quoting *Whitmore*, 495 U.S. 149, 163 (1990)). First, a next friend "must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on [her] own behalf to prosecute the action." *Id.* Second, the next friend "must be truly dedicated to the best interests of the person on whose behalf [she] seeks to litigate." *Doe*, 139 F.4th at 177 (quoting *Whitmore*, 495 U.S. at 163). "The burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Whitmore*, 495 U.S. at 164.

There is no real dispute that the first prong of the *Whitmore* test is satisfied. Ms. Williams Hunter has been adjudged incapacitated and therefore "cannot appear on [her] own behalf to prosecute the action." *Id.* at 163; *Walker v. Feller*, No. 05-CV-02689 (FB), 2005 WL 1971862, at *6 (E.D.N.Y. Aug. 16, 2005) ("Having been adjudicated an incapacitated person pursuant to Article 81 of the New York Mental Hygiene Law, [Plaintiff] may not initiate or prosecute a civil action, but must appear by his guardian *ad litem*.").

As to *Whitmore*'s second prong, however, Ms. Giszpenc has failed to satisfactorily show that she is sufficiently and truly dedicated to Ms. Williams Hunter's best interests. All Ms. Giszpenc offers in support of next-friend recognition is her own testimony that she has been a "childhood friend and trusted confidante" of Ms. Williams Hunter and that the two have "maintained a close friendship throughout [Ms. Williams Hunter's] career and personal life." Mot. ¶ 3. But the Court "need not accept [Ms. Giszpenc's] uncorroborated, self-serving testimony as true." *Grullon v. United States*, No. 99-CV-01877 (JFK), 2004 WL 1900340, at *6 (S.D.N.Y. Aug. 24, 2004). Indeed, numerous courts have rejected the same type of conclusory testimony as insufficient under *Whitmore*. *See, e.g.*, *Stine v. Saratoga Cnty. Sheriff's Off.*, No. 9:25-CV-01258 (GTS), 2025 WL 2781684, at *2 (N.D.N.Y. Sept. 30, 2025) ("Matthew provides

conclusory assertions that he has 'a bona fide "next friend" relationship with petitioner and is legally authorized to file this petition,'" but "Matthew's conclusory assertions alone are insufficient to prove that petitioner is incapable of asserting his own rights"); *Calderon ex rel. Santos v. Choinski*, No. 3:04-CV-01475 (JCH), 2006 WL 2474954, at *2 (D. Conn. Aug. 25, 2006) (finding no standing to maintain action as a next friend because the next friend failed to "come forward with any evidence beyond her conclusory allegations to prove [the real party's] incompetence"); *Maddy v. Ebbert*, No. 3:18-CV-01436, 2019 WL 294381, at *2 & n.2 (M.D. Pa. Jan. 23, 2019) ("Mr. Williams has failed to meet his burden to establish 'next friend' standing" because, *inter alia*, he "fail[ed] to present any evidence, aside from his own self-serving affidavit" that he is "'truly dedicated' to [the real party's] best interests").

Because Ms. Giszpenc's unsupported and unsubstantiated declaration is insufficient to establish the second prong of the *Whitmore* test, she may not sue as Ms. Williams Hunter's next friend. *See Doe*, 139 F.4th at 179 ("[T]he discretionary nature of Rule 17(c) . . . leaves the ultimate decision as to whether or not to appoint a next friend . . . with the sound discretion of the district court.").[6]

[6] This conclusion is reinforced by the fact that Ms. Williams Hunter presently has duly appointed representatives, Messrs. Diamond and Strauss, who are not defendants in this case and who can adequately protect her interests. *See* Williams Affidavit ¶ 4; *see also* Oct. 9, 2025 Tr. 13:5–14:1. Ms. Giszpenc's conclusory assertions that "Mr. Diamond's conduct and filings show that he is aligned with the guardianship team and Mr. Diamond has done nothing to advocate for Ms. Hunter's release from this guardianship," Mot. ¶ 14, fail to persuade the Court that Mr. Diamond and Mr. Strauss are unable or unwilling to pursue Ms. Williams Hunter's best interests.

Moreover, Ms. Williams Hunter has submitted a sworn and notarized affidavit with her signature affixed, stating that her court-appointed attorneys are "fighting for [her] rights every day in the guardianship," Williams Affidavit ¶ 4; she "did not consent to the filing of the Amended Complaint . . . and [does] not want this lawsuit to proceed," *id.*; she "[does] not believe [Ms. Giszpenc] is capable of or dedicated to representing [her] interests in this matter," *id.* ¶ 5; and she has "requested that [Mr. Diamond and Mr. Strauss] take whatever actions are necessary to once again stop all of this from happening," *id.* ¶ 7. While the Court does not treat this affidavit as dispositive of Ms. Williams Hunter's intent and wishes, the affidavit presents yet another reason why the Motion should be denied.

### C. The *Rooker-Feldman* and *Younger* Abstention Doctrines Bar Adjudication of the Claims Brought on Ms. Williams Hunter's Behalf

Separate and apart from the suitability of Ms. Giszpenc as next friend, Defendants argue that the *Rooker-Feldman* and *Younger* abstention doctrines apply to bar this action in its entirety given that the Amended Complaint challenges the Guardianship Court's previous rulings as unlawful and intrudes upon the continuing state guardianship proceeding. Morrissey Opp. at 10–16; State Opp. at 11–13; *see also* AC ¶ 657. The Court agrees in part. Pursuant to *Rooker-Feldman* and *Younger*, this Court must abstain from adjudicating the claims brought on behalf of Ms. Williams Hunter because it would entail hearing an appeal from a state court judgment or intervening in an ongoing state court proceeding. Whether *sua sponte* dismissal of Mr. Hunter's claims is appropriate is addressed below. *See infra* § II.D.

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *see also T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. 668, 672 (2026) (*Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))). There are "four requirements for the application of *Rooker-Feldman*: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck*, 773 F.3d at 426. The Supreme Court's most recent pronouncement on *Rooker-Feldman* clarified that the doctrine applies to federal suits seeking review and rejection of state-court judgments regardless of whether such

state-court judgments are final judgments rendered by the highest court of a State. *See Univ. of Maryland Med. Sys. Corp.*, 608 U.S. at 680.

Under *Younger* abstention, federal courts must "refrain[] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Additional, non-dispositive factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), are "appropriately considered" by a district court when evaluating whether to invoke *Younger* abstention: whether "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015); *see also Sprint*, 571 U.S. at 81.

Due in large part to the closed nature of the Guardianship Proceeding, *see, e.g.*, Dkt. No. 86-2, it is not entirely clear whether it is *Rooker-Feldman* or *Younger* that would provide the jurisdictional bar to this action. Ms. Morrissey argues that *Rooker-Feldman* precludes this Court from adjudicating Plaintiffs' claims because they "necessarily seek[] a ruling that certain particular and final orders central to the guardianship proceedings were incorrectly issued by the Guardianship Court," Morrissey Opp. at 11, whereas the State Defendants argue that the exercise of jurisdiction over Plaintiffs' claims would contravene *Younger* abstention by interfering with the ongoing Guardianship Proceeding, *see* State Opp. at 11. Plaintiffs state that the Guardianship Court "adjudicated Ms. Hunter incapacitated and expressly found that she lacks capacity to manage her legal, financial, and medical affairs," Dkt. No. 245 at 1, but also represent that "the [state] court proceedings . . . are still active," AC ¶ 72, and that they are "actively challenging the

gag orders in an Article 78 proceeding and seek injunctive relief barring their enforcement pending appellate review." Dkt. No. 245 at 3 n.1. In an abundance of caution, the Court addresses the issue under both frameworks and concludes that the claims brought on Ms. Williams Hunter's behalf must be dismissed under either *Younger* or *Rooker-Feldman*.

To the extent the state court proceedings are ongoing, abstention pursuant to *Younger* is warranted. This case "implicates the way that New York courts manage their own divorce and custody proceedings," *Falco*, 805 F.3d at 427, and thus, falls within *Sprint*'s third category: pending state civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions," *id.* at 428 (citing *Sprint*, 571 U.S. at 73); *cf.* AC ¶ 657 (seeking "a permanent injunction prohibiting Defendants from continuing to enforce, administer, or benefit from any orders, restraints, or fiduciary arrangements arising from or related to" Ms. Williams Hunter's guardianship). Abstention is further warranted because Plaintiffs seek relief in the form of a declaration that "[f]ederal judicial oversight or ancillary monitoring is warranted given the NYAG's failure to act on credible evidence of systemic abuse," AC at 135. That is precisely the "ongoing federal audit" of state proceedings "which would indirectly accomplish the kind of interference that *Younger* . . . and related cases sought to prevent." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974).

The non-dispositive *Middlesex* factors further support abstention. First, state court guardianship proceedings involve important state interests. *See Disability Rts. N.Y. v. New York*, 916 F.3d 129, 136 (2d Cir. 2019) (observing that "states have an especially strong interest" in "state court procedure in guardianship proceedings" and affirming district court's abstention under *Younger*); *see also Toriola v. N. Shore LIJ*, No. 09-CV-03251, 2009 WL 2338037, at *2 (E.D.N.Y. July 29, 2009) ("As plaintiff seeks to have this court intervene in a pending state court

proceeding in an effort to challenge the guardianship of her mother, this court must abstain."). Second, New York state courts provide an adequate opportunity to raise the claims brought on behalf of Ms. Williams Hunter in this litigation. *See Disability Rts. N.Y.*, 916 F.3d at 136 (finding *Younger* abstention "supported by the availability of other avenues of relief" including the state courts, to challenge the constitutionality of Article 17A guardianship proceedings). Ms. Williams Hunter and any person, including Ms. Giszpenc, who is "concerned with the welfare of the person alleged to be incapacitated," New York Mental Hygiene Law § 81.06, may seek to modify or terminate the guardianship within the Guardianship Proceeding, if they deem it warranted and necessary. *See id.* § 81.35 ("Upon motion, the court appointing a guardian may remove such guardian when the guardian . . . is guilty of misconduct, or for any other cause which to the court shall appear just."). To the extent modification or termination of the guardianship was sought but denied, that denial could be appealed to a New York state appellate court. *See, e.g.*, *In re Harold W. S.*, 134 A.D.3d 724, 724–25 (2d Dep't 2015); *In re Thomas J.*, 130 A.D.3d 1030, 1031 (2d Dep't 2015). Nor do Plaintiffs identify "any procedural barrier to [the] assertion of constitutional issues in the state court proceeding." *Fishman v. Off. of Ct. Admin. N.Y. State Cts.*, No. 18-CV-00282 (KMK), 2020 WL 1082560, at *11 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021); *see also Donkor v. City of N.Y. Hum. Res. Admin. Special Servs. for Child.*, 673 F. Supp. 1221, 1226 (S.D.N.Y. 1987) ("[The Second] Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions.").

To the extent the state court proceedings have concluded, or the issues raised in this lawsuit are best viewed as challenges to previous final orders issued by the state court, the *Rooker-Feldman* doctrine precludes this Court from reviewing the Guardianship Court's

decisions. With respect to *Rooker-Feldman*'s first requirement, Plaintiffs "lost" in state court (at least on the claims that are purported to be brought on behalf of Ms. Williams Hunter) because the Guardianship Court adjudged Ms. Williams Hunter incompetent, and appointed Ms. Morrissey as her guardian. *See Galanova*, 432 F. Supp. 3d at 443. The fourth requirement is met because [redacted], and the Motion and Amended Complaint were filed in November 2025. *See* Morrissey Decl. ¶ 5.

The second requirement is met because any injuries about which Plaintiffs complain relate to injuries that flow directly from the determinations of the Guardianship Court. The gravamen of the Amended Complaint is that the initiation and continued imposition of Ms. Williams Hunter's guardianship was and remains an unlawful scheme enacted for the purpose of financially exploiting and controlling Ms. Williams Hunter, resulting in the deprivation of her constitutional rights. *See* AC ¶¶ 6, 18, 37, 85, 256, 326, 421, 461, 644. To the extent that Plaintiffs complain about a fraudulent Article 81 proceeding, those claims satisfy the second requirement of *Rooker-Feldman*. *See Vossbrinck*, 773 F.3d at 427 (claims that a state judgment was wrongfully issued in favor of parties making fraudulent claims is barred by *Rooker-Feldman*). To the extent that Plaintiffs complain about injuries to their bank accounts and assets that resulted from the actions taken by persons and entities acting under the authority of the Guardianship Court's appointments, those injuries are "caused" by the decisions of the Guardianship Court. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) ("[P]laintiff is seeking to undo the 2005 state court judgment . . . and the complaint can be construed as alleging injuries that occurred as a result of the judgment."), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). And to the extent that Plaintiffs allege injuries in the form of constitutional

deprivations "arising from or related to" Ms. Williams Hunter's guardianship, those injuries are also obviously caused by the Guardianship Court's incapacity ruling and appointments.

Lastly, the third *Rooker-Feldman* requirement is met because Plaintiffs seek a review and rejection of the Guardianship Court's judgment. Plaintiffs ask this Court, in substance, to find that the Guardianship Court erred in its determinations that Ms. Williams Hunter is incapacitated and that Ms. Morrissey should be the guardian, and that therefore, all subsequent actions taken under the cover of the state guardianship are void. AC at 135–36. Such relief "would require the federal court to review the state proceedings and determine that the [] judgment was issued in error." *Vossbrinck*, 773 F.3d at 427; *see also James v. New York*, No. 10-CV-00470 (JG) (VVP), 2013 WL 1873276, at *4 (E.D.N.Y. Mar. 6, 2013) ("The appointment of a guardian ad litem for the plaintiff by this court would in essence upset the state court finding . . . that her appointed guardians are qualified to represent her.").

Plaintiffs argue on reply that neither *Rooker-Feldman* nor *Younger* apply. Reply at 8–9. Regarding *Rooker-Feldman*, Plaintiffs contend that the doctrine is triggered "only where a federal plaintiff complains of an injury caused by a state-court judgment and invites the federal court to review and reject that judgment." *Id.* at 8. According to Plaintiffs, the Motion "does neither," and instead, "asks this Court to determine who may act on Ms. Hunter's behalf in this federal proceeding pursuant to Rule 17(c)." *Id.* While it may be true that, viewed in isolation, the Motion seeks only a ruling on the next friend application, the only purpose for a next friend appointment would be to pursue the claims alleged in the Amended Complaint on behalf of Ms. Williams Hunter. The Court is not required to put on blinders and ignore the reality of the litigation, and there is no point to continuing on a round-robin of potential next friend candidates if the claims themselves cannot be heard in this Court regardless of who purports to bring them.

The Amended Complaint "is clearly an effort to appeal to this court the state court's appointment of guardians." *James*, 2013 WL 1873276, at *4; *see* AC at 135–36 (seeking a permanent injunction "[v]acating Sabrina Morrissey's appointment as Guardian and appointing a neutral, independent fiduciary"). Plaintiffs' claims are "inextricably intertwined with the state court judgments that [they] assert[] are adverse to [their] interests." *James*, 2013 WL 1873276, at *4; *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) (holding that district courts lack jurisdiction "over challenges to state court decisions . . . arising out of judicial proceedings even if those challenges allege that the state court's actions were unconstitutional"); *Advani v. App. Term, 2nd Jud. Dep't*, No. 25-CV-01627 (JMF), 2025 WL 2201065, at *3 (S.D.N.Y. Aug. 1, 2025) ("The *Rooker-Feldman* bar cannot be overcome by the mere characterization of the state court's judgment as unconstitutional."). Plaintiffs assert that the Motion "does not seek reversal of a state guardianship order, ask this Court to invalidate state court findings, or request injunctive relief against ongoing state proceedings," Reply at 8, but, again, that is not the correct framing of what the Motion seeks. The Motion seeks approval for Ms. Giszpenc to *bring the claims asserted in the Amended Complaint*, and the relief sought by those claims includes an injunction "[e]njoining enforcement of the unlawful guardianship" and "[o]rdering Ms. Hunter's immediate release from involuntary confinement." AC at 135–36. Even if the Court were to set aside the flaws in Ms. Giszpenc's Rule 17 application, discussed *supra*, the Court would decline to grant approval to bring claims that simply cannot be brought in this Court.

Plaintiffs' argument for why *Younger* abstention does not apply fares no better. According to Plaintiffs, *Younger* is triggered "only where federal adjudication would interfere with an ongoing state proceeding implicating important state interests." Reply at 8. As

discussed above, that is exactly the situation here. *See Falco*, 805 F.3d at 427–28; AC at 135–36.

Accordingly, the claims brought on behalf of Ms. Williams Hunter are dismissed with prejudice as barred under either the *Rooker-Feldman* or *Younger* abstention doctrines. *See Mennella v. Carey*, 253 F. App'x 125, 126–27 (2d Cir. 2007) (affirming *sua sponte* dismissal of complaint because "the claims raised in the complaint were unequivocally barred by the *Rooker-Feldman* doctrine"); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013) ("[B]efore analyzing the merits of the parties' motions, the Court must determine, *sua sponte*, whether *Younger* bars the claims." (citing *Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir. 1987))).

**D. The Court Declines to Dismiss Mr. Hunter's Claims *Sua Sponte***

Defendants contend that *sua sponte* dismissal of Mr. Hunter's direct claims is likewise warranted under *Rooker-Feldman*, *Younger*, or *O'Shea*. Morrissey Opp. at 10; State Opp. at 13.

As an initial matter, the Amended Complaint expressly states that "Mr. Hunter's individual claims arise from the financial and emotional harm he has suffered which can be directly traced to Defendants' fraudulent initiation and unlawful administration of the guardianship proceeding." AC ¶ 18; *see also, e.g.*, *id.* ¶¶ 330, 343, 370, 376, 384–85. But Mr. Hunter's claims also relate to a separate New Jersey state court action, which, according to Mr. Hunter, was "necessitated by the Defendants' interference with financial obligations arising from Ms. Hunter's divorce." *Id.* ¶ 68; *see also id.* ("Mr. Hunter was compelled to initiate a post-disposition relief motion in the Superior Court of New Jersey, Chancery Division, Family Part, under Docket No. FM-09-001472-25-R.").

Notwithstanding colorable bases for abstention as to Mr. Hunter's claims,[7] the record presently before the Court is insufficient to establish that the requirements for abstention are met. The Court does not know, for example, what the predicate judgment in the New Jersey state court action is, whether that judgment was entered before the federal action commenced, and whether the proceedings in the New Jersey state court have concluded or are ongoing. *See Smith v. D'Agostino*, No. 25-CV-01265 (MAV) (CDH), 2025 WL 3525935, at *5 (N.D.N.Y. Dec. 9, 2025) ("[T]he substance and procedural posture of the case for each of the particular rulings that Plaintiff challenges are ambiguous at this point, and require the Court to refrain from a definitive ruling as to the application of either doctrine.").

Accordingly, at this stage, the Court declines Defendants' invitation to dismiss Mr. Hunter's direct claims *sua sponte*.

**CONCLUSION**

For the foregoing reasons, Ms. Giszpenc's motion for recognition as Ms. Williams Hunter's next friend, Dkt. No. 197, is DENIED, and the claims purportedly brought on behalf of Ms. Williams Hunter are DISMISSED with prejudice.

Plaintiffs' motion to amend the caption, Dkt. No. 198, and Mr. Diamond's renewed motion to intervene, Dkt. No. 221, are DENIED AS MOOT. The pending motions to seal, Dkt. Nos. 195, 210, 223, 225, 226, 228, 230, 233, and 242, are GRANTED. The Court has reviewed the requested redactions and sealed material and concluded that the sealing is necessary to

---

[7] For example, certain Defendants have argued in connection with a motion to stay discovery that Mr. Hunter's claims are barred by *Rooker-Feldman* because Mr. Hunter lost in the New Jersey state court action, alleges that the New Jersey state court's judgment injured him by disrupting payments due under his and Ms. Hunter's marital settlement agreement, and asks this Court to review and overturn the New Jersey state court's decisions. *See* Dkt. No. 165 at 3. *Younger* and *O'Shea* abstention may apply as well. *See, e.g.*, *Disability Rts. New York*, 916 F.3d at 136 ("As in *O'Shea*, [Plaintiff's] requested relief would effect a continuing, impermissible 'audit' of New York Surrogate's Court proceedings, which would offend the principles of comity and federalism.").

respect the sealed nature of the Guardianship Proceeding and the Guardianship Court's orders, and also to protect Ms. Williams Hunter's private medical and financial information. These interests at present are sufficient to overcome the presumption in favor of public access to judicial proceedings and documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). Finally, Mr. Young's motion seeking the appointment of counsel, Dkt. No. 182, is DENIED AS MOOT because all claims against him are being dismissed.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 182, 195, 197, 198, 210, 221, 223, 225, 226, 228, 230, 233, and 242.

The parties shall appear for a conference on **Thursday, October 22, 2026**, at **10:00 a.m.**, in Courtroom 906 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, NY 10007, to discuss how this case will move forward.

Dated: September 30, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge